## J. F. BAKER & CO. v. PANOLA COUNTY.

The 1st section of the act of 11th May, 1846, to incorporate counties, reads as follows: "Each county which now exists, or which may be hereafter established, in this State, shall be a body corporate and politic." (Paschal's Dig., Art. 1044, Note 430.) The county court is the organ or agent of the county, but in levying taxes it is limited by law.

The 4th section of the act of 16th March, 1848, to organize county courts, reads as follows: "The said county courts shall have power to levy and collect a tax for county purposes upon all subjects of taxation in their respective counties on which a tax may be levied by the state: *Provided,* Said tax shall not exceed in one year one-half the amount of the tax levied by the state on such subjects of taxation: *And provided, also,* That such tax shall be apportioned in the same manner as the state tax; and the said tax upon all subjects of taxation, other than trades, and occupations, and professions, shall be assessed and collected by the assessor and collector of state taxes in the same manner as the state tax, and shall be paid by him into the county treasury; and all of said taxes upon trades, occupations, and professions, shall be collected by the county treasurer in the same. manner as the state tax upon such subjects is collected, and the county treasurer shall have the same power to enforce the collection of such taxes for the counties as the assessor and collector has for the state." (Paschal's Dig., Art. 1230.) This article limited the powers of the counties to tax to the subjects upon which a tax was levied by the state.

But the tax law of 1848, upon which the controversy rested, did not enume-

rate the occupation of retailing spirituous liquors among the callings to be taxed. (O. & W. Dig., Arts. 1933, 1936, 1937; Paschal's Dig., Arts. 5150, 5153, 5154, Notes 1127–1129.) Therefore it was not a subject of taxation on which a tax had been levied by the state. (Paschal's Dig., Art., 1230.)

The act of 2d Feburary, 1856, licensing the retailing of spirituous liquors, was not intended as a tax law, as ordinarily understood; but it was mainly for that occupation, conferring a privilege upon the conditions prescribed in the act. (Paschal's Dig., Arts. 2061–2071, Notes 651–653.)

The assessors and collectors had no authority to collect this tax; and hence the county court had not the authority to levy a tax on this occupation of retailing liquor.

Where a citizen was compelled to pay the county tax, in addition to the license tax prescribed under the act of 1856, as a condition precedent to obtaining a license to retail liquor under that act, and paid under protest, he had the right to recover the money; his claim having been refused under the 2d section of the act about counties. (Paschal's Dig., Art. 1045.)

APPEAL from Panola. The case was tried before Hon. CHARLES A. FRAZER, one of the district judges.

This was an action brought by the appellants against the appellee to recover back the sum of $280, paid by them to Panola county as a license tax for retailing spirituous liquors. The demurrer of defendants was sustained, judgment rendered against plaintiffs, to which they excepted, and brought this appeal.

*A. W. De Berry*, for appellant.—The principal question that I desire to present is this: Had the county court any authority to levy any license tax in addition to the $250 tax imposed upon retailers by the act of 2d February, 1856? (O. & W. Dig., p. 386.) The appellee claims the right under Art. 248, O. & W. Dig.

Again, the act of 2d February, 1856, Art. 1754, provides, that upon the presentation of the application the court shall direct the clerk to issue a license to the applicant, authorizing him or them to retail, &c., upon the conditions thereinafter named. The conditions are, the payment of $250 and the giving of bond.

No other conditions are mentioned. It will, therefore, be presumed that no others were intended.

*Charles D. Moore,* for appellee.—I presume that it is not necessary to cite authority to show that all the counties are corporate bodies, and as such have full and ample authority to do any act not in conflict with the constitution and laws of the state. It certainly cannot be denied that the county courts have power to exercise all the authority conferred on them by statute. The duties and powers of the county courts, other than for probate business, is fully defined by statute. (O. & W. Dig., Art. 248.) By reference to that section of the statute it is seen, that the several county courts are authorized to levy taxes upon all things taxed by the state, provided the tax does not exceed fifty per cent. of the state tax for any one year, and provided taxes shall be equal: the last cited article being the one under which the tax imposed was levied.

I would ask, is there any thing contained in article 1759 that would abridge the power of the county courts to levy the tax, unless it is the application of the revenue thus arising? I would here remark, that in addition to the authority conferred on the county courts by article 248, to levy taxes generally, article 1986, (O. & W., Dig,) beyond a doubt, authorizes the said court to tax, for county purposes, all vocations and callings.

But to return to the argument based upon the application of the revenue arising under the liquor law: I reply, the state is bound to protect her citizens and to organize and establish courts to decide their disputes. (Vatt., pp. 77 and 78, secs. 158, 159, 161.) This being the duty of the state, it follows that the state must sustain the courts.

The state imposed the tax of $250 per annum on retailers, and had the authority under the constitution. (Const. of State, art. VII, sec. 27.) And if the state levied the tax through the legislature, had not the legislature the authority to direct how and to what particular purpose the revenue thus arising, or any other revenue, should be appropriated? (Vatt., p. 111, sec. 242.)

The mere fact that the liquor law does not, in so many terms, authorize the county courts to lay an additional tax, will not repeal the provisions of Arts. 248 and 1986, O. & W. Dig. There is no repealing clause in the act of February 2, 1856. And it is a well-established principle, that repeals by implication are not favored. "A subsequent act, in order to repeal a former act by implication, must be clearly in conflict with the former act, and show a change of the legislative mind." Such is not the case in this instance.

SMITH, J.—The main question in this cause is, whether the county courts, in the years 1858 and 1859, had authority to levy and collect, for county purposes, a tax upon the occupation of retailing spirituous and vinous liquors in quantities less than a quart, in addition to the $250 per annum fixed by law as "license tax" upon that occupation.

Each county established in this state is a body corporate and politic. (Art. 229, O. & W. Dig.,) [Paschals Dig., Art. 1044, Note 430.] And the county court is constituted the organ or agent by which the county acts. It contracts, creates, and fixes the liabilities upon the county, and provides to discharge them; yet I presume it cannot be seriously contended, that the county court has any power or authority to levy a tax beyond that which may be conferred upon it by law. The extent of its agency for the county is fixed and defined by law, and it cannot go beyond the authority thus conferred.

"An act to organize county courts," approved 16th March, 1848, provides in the 4th section as follows, to wit: "The said county courts shall have power to levy and collect a tax for county purposes upon all subjects of taxation in their respective counties on which a tax may be levied by the state: *Provided,* Said tax shall not exceed in any one year one-half the amount of the tax levied by the state on such subjects of taxation: *And provided also,* That such

tax shall be apportioned in the same manner as the state tax; and the said tax upon all subjects, other than trades, and occupations, and professions, shall be assessed and collected by the assessor and collector of state taxes in the same manner as the state tax, and shall be paid by him into the county treasury. And all of said taxes upon trades, occupations, and professions, shall be collected by the county treasurer in the same manner as the state tax upon such subjects is collected. And the county treasurer shall have the same power to enforce the collection of such taxes for the counties as the assessor and collector has for the state." [Paschal's Dig., Art. 1230.]

·Under the provisions of this law the county courts had the authority to levy and collect a tax for county purposes "upon all subjects of taxation in their respective counties on which a tax was levied by the state;" and from the rule before cited, in respect to the functions and powers of the county court, if the state does not levy a tax upon any particular thing, we must conclude that the county court cannot levy a tax upon it.

Upon examination of the tax law of February, 1848, which properly fixed and defined the subjects of taxation by the state, it will be seen that the occupation of retailing spirituous and vinous liquors in quantities less than a quart is not enumerated as one of the subjects of taxation "for the use of the state." The law is specific in its designation of the subjects upon which the taxes are levied (Art. 1933, O. & W. Dig.) or to be assessed and collected "for the use of the state." (Arts. 1936, 1937, 1938, O. & W. Dig.,) [Paschal's Dig., Arts. 5150, 5153–5155, Notes 1127–1129.] And when we consider the fact that the legislature, in the enactment of the tax law, had before its mind and for its consideration all the subjects of taxation in the state, (property, occupations, trades, professions, and incomes,) and in the enumeration of the specific subjects of taxation "for the use of the state," omitted the

occupation of retailing spirituous and vinous liquors, it would seem to be improper to conclude that it is "a subject of taxation" "on which a tax may be (is) levied by the state."

The act providing for the payment of $250, and for the issuance of license to retail spirituous and vinous liquors, was not intended as a tax law, as ordinarily understood, for the purpose of raising revenue for the use of the state, but was intended mainly for the regulation of that occupation. There are several conditions to be complied with besides the payment of the $250, before the license can legally issue, to wit: the county court must first grant the "privilege," and bond with security must be given, conditioned to keep an orderly house, &c. And it may be contended with much plausibility, that though the $250 is called "a license tax," still that all these things, including the payment of the $250, might be held to be conditions precedent, or the consideration upon which the privilege is granted, and that the $250 is not a tax imposed upon the occupation. The amount is payable into the county treasury, to be appropriated to the payment of grand and petit jurors.

It is contended, however, that the $250 is a tax imposed upon that occupation by a state law, and enforced through the county courts for a state purpose, that is, the payment of the jurors of the county, and that it is the duty of the state thus to provide for them. The duty of paying the jurors of the counties does not devolve upon the state, but rests primarily upon the counties, and it must follow that the levy of the $250 is not for a state purpose, or in order to relieve the state from any liability whatever, but for a county purpose only.

There are other provisions of Art. 248, O. & W. Dig.; which seem to fortify the position, that the county court can only levy a tax upon the same subjects of taxation that the state does for state purposes: First, it is provided that the county tax shall not exceed in any one year one half

the amount of the tax levied by the state; second, it is apportioned in the same manner as the state tax; third, the county tax upon property shall be collected by the assessor and collector of the state tax, and in the same manner; fourth, all taxes upon trades, occupations, and professions, shall be collected by the county treasurer in the same manner as the state tax upon such subjects is colected; fifth, and the county treasurer shall have the same power to enforce the collection of such taxes for the counties as the assessor and collector has for the state. [Paschal's Dig., Art. 1230.]

The assessor and collector had no authority, under any law in force in 1858 or 1859, to collect the $250 "license tax." No manner was designated for him to enforce its collection. Its payment voluntarily to the county treasurer was a condition precedent to the issuance of license. And as the power and manner of enforcing the collection of the county tax levied upon any occupations given the county treasurer was the same as that given the assessor and collector of the state taxes on the same subjects of taxation, and as the latter had no authority to assess and collect any tax for the state on the occupation of retailing spirituous and vinous liquors in less quantities than a quart, it would seem to follow that it was not intended by the law that the county treasurer should make such a collection, or that the county court should ever levy a tax on that occupation; and this view strengthens the position, that this is not a subject of taxation on which the state has levied a tax, so as to authorize the county court to levy one on it for county purposes also.

From the foregoing considerations, we conclude, that the county court of Panola county exceeded its authority in levying a tax on the occupation of retailing spirituous and vinous liquors in less quantities than a quart, and that the same was improperly demanded of the plaintiffs by the officers of the county under the order of the county court, which, according to the averments of the petition, was

paid by the plaintiffs under protest, and has been appropriated to the use of the county.

Some of the authorities say that money paid voluntarily by a party, with full knowledge of the facts, but under a mistake of law, cannot be recovered back; but this rule does not apply when the parties are not upon equal terms in the transaction. "If one party has the power of saying to the other, that which you require shall not be done except upon the condition which I choose to impose, no one can contend that they stand upon anything like an equal footing." (Morgan v. Palmer, 2 Barn. & Cress., 319; Corporation of City of Marshall v. Snediker & Cole, decided at Tyler term, 1860,) [25 Tex., 460.]

It is averred that the clerk of the county court, by its order, refused to issue the license to retail spirituous and vinous liquors to the plaintiffs, as the law directed him, until this additional amount was paid him. Whether that demand and condition be legal or not, it must be admitted that the parties were not on equal terms, and that the plaintiffs had to run the risk of being indicted for retailing intoxicating liquors without license or pay the amount demanded, and they paid it under a protest. Under these circumstances, it would be inequitable to permit the county to hold the funds thus acquired under the color of authority, and it can be recovered. The plaintiffs presented their claim to the county court for allowance, and it was rejected, and this suit was then properly brought against the county. (O. & W. Dig., Art. 230,) [Paschal's Dig., Art. 1045.]

There are no special exceptions to the petition, and we believe there is a cause of action stated sufficient to obviate a general demurrer, and that the court erred in sustaining it; and, therefore, it is ordered that the judgment of the court below be reversed, and the cause

REMANDED.