## SLAUGHTER et al. v. SUNDOWN INDEPENDENT SCHOOL DIST. et al.

### No. 3568.

Court of Civil Appeals of Texas. Amarillo.
March 11, 1931.

Rehearing Denied April 1, 1931.

Lockhart, Garrard & Brown, of Lubbock, for appellants.

Vickers & Campbell, of Lubbock, for appellees.

### JACKSON, J.

The appellants filed in the district court of Hockley county, Tex., a suit against the Sundown independent school district, cause No. 179, and suit against the Clauene independent school district, cause No. 180, and the respective trustees of each district, to recover from each district taxes they had paid to the respective districts under protest.

While no new or additional pleadings were filed, the cases were consolidated and tried together.

The appellants alleged, in substance, that they were the owners of 4,921 acres of unimproved grazing lands in the Sundown district and the owners of 8,856 acres of unimproved grazing lands in the Clauene district.

That the respective trustees of each district levied $1 on each $100 valuation of the taxable property in said districts for school purposes, and valued appellants' land at $20 per acre.

That the trustees, officers, and agents of said school districts made a blanket assessment against all lands in each of said districts at a valuation of $20 per acre, without regard to the character of the land, the location thereof, or the improvements thereon. That while appellants' land is unimproved grazing land, the other lands in the district, or a greater portion thereof, are farming lands in a high state of cultivation, with valuable improvements thereon. That, if the other lands in the district are to be valued for tax purposes at only $20 per acre, appellants' land should not be valued at over $10 per acre for such purpose. That the taxes levied and collected against appellants by said two school districts on a valuation of $20 per acre on appellants' land amounted in the aggregate to the sum of $2,795.62. That the assessment and collection of taxes by said school districts at a valuation of $20 per acre against appellants' unimproved grazing land and the assessment and collection of taxes at a valuation of $20 per acre against the other lands in said districts, which were farming lands under a high state of cultivation with improvements thereon, did not constitute the equal and uniform taxation of property in the districts in proportion to its value under the Constitution and laws of the state. That, if said assessments and valuations had been equal and

uniform and in proportion to value, appellants would have been required to pay to both districts the aggregate sum of only $1,397.81. That such unequal and arbitrary valuation, assessment, and collection of taxes constituted a discrimination against appellants and violated the rights guaranteed to them under the Constitution and laws of the state.

That appellants paid said sum of $2,795.62 under pressure and over their protest in order to escape the interest and penalty that would be charged against them on February 1st for nonpayment. That there is in the treasury of each district sufficient funds, or that there are unpaid delinquent taxes for the year 1929 due in each district, amounting to a sum sufficient to refund and return to appellants the money each district illegally collected and withholds from them and for which they sue.

The appellees answered by general demurrer, special exceptions, and general denial.

They specially allege that the taxes against appellants' property had been duly and legally assessed and the valuation thereof in each district ascertained by the equalization board for each of said districts and appellants notified of such valuation. That appellants made no protest to such equalization boards relative to such valuations, and in no way contested the decision of said boards, and appellees caused their assessment rolls to be made up and delivered to the tax collectors and appellants voluntarily paid such taxes, and such payments were lawful and not illegal by reason of all of which the appellants are estopped in law and equity to recover judgment for any amount against either of said school districts.

At the conclusion of the testimony, the court peremptorily directed a verdict in favor of appellees, and, on the verdict returned in obedience to such instruction, the court rendered judgment that the appellants take nothing by their suit and the appellees go hence with their costs, from which judgment this appeal is prosecuted.

The appellants challenge as error the action of the trial court in peremptorily directing a verdict against them, asserting that the pleadings and the testimony present issues of fact which they were entitled to have the jury determine.

The appellees contend that the trial court correctly directed a verdict in their behalf, claiming that the assessment of the taxes and the valuation of the property by the equalization boards were legal; that the appellants' suit is a collateral attack upon the judgment of the board, which is a quasi judicial tribunal, and that appellants' payment was voluntary.

The testimony discloses without controversy that, before the districts were canvassed, the school trustees directed the assessors to assess the land in the entire district at $20 per acre; that this value was not placed on the land by the assessor; that some of the owners of property in the districts rendered their lands at less than $20 per acre, but, when the boards of equalization met, they arbitrarily fixed the tax on all the lands in the district at the price of $20 per acre, regardless of whether the land was good or bad, without regard to how the land was located, whether close to the schoolhouse or far off and without regard to whether the lands were improved or unimproved. That no difference was made in the value of the improved land and the unimproved land or in the value of the grazing lands or cultivated lands in equalizing the values. That no effort was made to assess each tract according to the value thereof, but a blanket valuation of $20 per acre was placed on all the lands in the districts.

That appellants were nonresidents of Hockley county, but sent in the rendition for their lands fixing the value at $10 per acre. That, when the boards of equalization met, they placed the value of all the lands in the districts at $20 per acre and raised appellants' land from the amount at which it had been rendered to a value of $20 per acre. That they notified appellants that their taxes had been raised, but appellants did not appear before the equalization boards and protest the valuations. That the boards, after the value was raised by them, requested appellants to change their rendition to $20 per acre, but they refused to do so.

The testimony tends to show that appellants' land is raw unimproved land used for grazing purposes; that it is about on an average in value with other unimproved lands in the districts; that from one-third to one-half of the land in the districts is improved; that the difference in the value of improved lands and unimproved lands is approximately $10 per acre, depending on the value of the improvements. That where the improvements cost less, the enhancement is less, and, where the improvements cost more, the enhancement is more. That most of the improved lands are small farms and consist of a labor of land, or 177 acres, with a small house, well, windmill, and a field thereon which is cultivated.

That appellants offered to pay their taxes on a value of $10 per acre as it was rendered, and tendered that amount to the tax collectors, which was refused. That on January 28, 1930, after the collectors refused to accept appellants' taxes on a valuation of $10 per acre, appellants paid the tax on the valuation placed on their property by the boards of equalization, under protest, advising the collectors that they were doing so for the purpose of escaping the penalty and interest that would accrue if their taxes became delinquent and for the purpose of avoiding liti-

gation. On the check with which the taxes were paid is indorsed a protest to the effect that they are paid to escape penalty, interest, and suit.

The act creating the Clauene independent school district authorizes the board of trustees of said district to act as a board of equalization and gives them the authority conferred by law on the commissioners' court when sitting as a board of equalization. Special Acts of the 39th Legislature (1925), Reg. Sess., p. 69, c. 30.

The record does not disclose how the Sundown independent school district was created, but indicates that it was created out of a portion of the territory of the Clauene independent school district after the taxes for the year 1929, involved in this controversy, had been assessed and the values equalized by the authorities of the Clauene independent school district, and that such assessment and equalization were adopted by the Sundown independent school district.

In Garza Land & Cattle Co. v. Redwine Independent School District et al., 282 S. W. 905, 908, this court said:

"Article 7530, V. S. C. S. (article 7174, R. C. S. 1925), provides, in substance, that each separate parcel of land shall be valued at its true and full value, and that the assessor shall value each tract or lot by itself at such price as he believes it to be fairly worth in money at the time of the assessment.

"Article 7504, V. S. C. S. (article 7146, R. C. S. 1925), provides that real estate, for the purpose of taxation, shall be construed to mean the land itself, the buildings, structures, and improvements thereon.

"Article 7564, V. S. C. S. (article 7206, R. C. S. 1925), constitutes the commissioners' court of each county a board of equalization for the purpose of equalizing the taxes, and directs:

"'That they shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible.'

"Section 12 of the acts of the Legislature creating the Redwine independent school district (Gammel's Laws of Texas, vol. 20, p. 216) authorizes the trustees to fix the values of the property in the district for taxing purposes, and gives them all the power of the commissioners' court when sitting as a board of equalization to fix such values.

"It is certain that the assessor made no attempt to arrive at the true and full value of each tract of land in the district, and equally certain that the trustees, acting as a board of equalization, made no effort to separate the improved lands so as to embrace the better quality of land and improvements in the first class, the second quality of lands and improvements in the second class, and the third quality of lands with inferior improvements in the third class; nor were the unimproved lands so divided for valuation purposes as to embrace first, second, and third class lands; hence, the values were not ascertained as provided by law, but were determined and fixed arbitrarily by a method or system which was at complete variance with the provisions of the statutes."

In Druesdow et al. v. Baker et al., 229 S. W. 493, 495, the Commission of Appeals says: "The decisions of the Tax Board in the matter of valuations are quasi judicial in their nature. This action is therefore a collateral attack upon the judgment of a quasi judicial tribunal. Such an attack cannot be justified in the absence of fraud, or something equivalent thereto; lack of jurisdiction; an obvious violation of the law, or the adoption of a fundamentally wrong principle or method, the application of which substantially injures complainant. No mere difference of opinion, as to the reasonableness of its valuation, when such valuations, though deemed erroneous, are the result of honest judgment, will warrant interference by the courts. Pittsburg, C., C. & St. L. R. Co. v. Backus, 154 U. S. 434, 14 S. Ct. 1114, 38 L. Ed. 1039; Western Union Telegraph Co. v. Taggart, 163 U. S. 30, 16 S. Ct. 1054, 41 L. Ed. 49."

In Ogburn v. Ward County Irr. Dist. No. 1, 280 S. W. 169, 171, in the opinion by the Commission of Appeals, approved by the Supreme Court, it is said: "Without reference to the value of improvements all lands in the district were by the board given an arbitrary value according to the respective zones in which they are situated and the use to which they were put. All personal property was valued at one-half its real value. This action on the part of the board was in violation of the constitutional provision that property should be taxed in proportion to and at its fair value, and that taxation shall be equal and uniform. They have arbitrarily and grossly overvalued his property and discriminated against him. The defendant in error is not entitled to recover on the value placed on his property by the board. Lively v. Railway Co., 120 S. W. 852, 102 Tex. 545; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870. While it is not necessary here to so decide, we are inclined to the opinion that, under the facts in this case, no recovery could be had on the values at which this land was appraised by the board, even had Ogburn been given the notice required by law. The total disregard of the Constitution and laws in appraising property by the special tribunal provided, should, we think, be

held to be such jurisdictional defect as should defeat a recovery of the taxes based thereon."

■ If the board of trustees had all the land in the districts assessed at the arbitrary value of $20 per acre, and the equalization boards arbitrarily placed such value on all the lands, as this record indicates without substantial contradiction, and without an effort to classify the land under the statute and arrive at its true value and without regard to the character, location, or improvements situated on the different tracts of land, such action "was in violation of the constitutional provision that property should be taxed in proportion to and at its fair value, and that taxation shall be equal and uniform." Ogburn v. Ward County Irr. Dist. No. 1, supra.

■ Under these conditions, such action of the boards was subject to collateral attack because in obvious violation of the law and the Constitution of the state and fundamentally wrong in principle and method. Druesdow et al. v. Baker et al., supra. See, also, Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756.

■ If appellants were required to pay taxes on a valuation greater in proportion to its fair value than a great portion of the other landowners in the district, they were substantially injured and they were entitled to have the jury determine, under the testimony, the value of their lands and the values of the other lands in the district.

■ In our opinion, the testimony does not show, as a matter of law, that the payment of the taxes by appellants to the school districts was such a voluntary payment as to defeat a recovery of such amount of the taxes as were illegal. The testimony tends to show that they offered to pay on the amount of $10 per acre, that their offer was refused, that on January 28th they paid the taxes and advised the collectors that they were doing so under protest to prevent the accrual of interest and penalty after January 31st, and that suit would be instituted by appellants to recover the illegal taxes paid. This suit was filed on May 29, 1930, for that purpose.

In Galveston Gas Co. v. County of Galveston, 54 Tex. 287, the Supreme Court announces that:

"The rule heretofore enforced in this court in regard to the recovery back of taxes illegally exacted, is perhaps more liberal than that sanctioned by the current of authority generally. City of Marshall v. Snediker, 25 Tex. 471 [78 Am. Dec. 534]; Baker v. Panola County, 30 Tex. 86; Galveston County v. Gorham, 49 Tex. 301 et seq.

"These cases recognize that a payment may be compulsory, although not made to relieve the person or goods from seizure or detention, actual or threatened, if made under circumstances creating a moral pressure of 'equal influence in perverting the free will.' Galveston County v. Gorham, 49 Tex. 279, supra. Where made to avoid the danger of a heavy penalty, which, however, could only have been enforced by a criminal prosecution, in which the party would have had his opportunity to set up the illegality of the tax as a defense, the recovery back was allowed. 25 Tex. and 30 Tex., supra. On the same principle, we think that the plaintiff here was not compelled to risk the heavy loss which might have resulted from the sale, although his possession could only have been disturbed by a suit, in which he would have had his day in court. The moral pressure was sufficiently great, the necessity sufficiently immediate and urgent, to remove the payment, made under protest, from the class of voluntary payments."

In the case of Galveston County v. Gorham, 49 Tex. 279, it is held that the taxes in that case were voluntarily paid and could not be recovered, but, on page 310 of 49 Tex., the court says, in effect, that, if there had been a protest or notice given that suit would be brought to recover the illegal taxes, and suit had been brought promptly, a voluntary payment would have been rebutted.

In City of San Antonio v. Grayburg (Tex. Civ. App.) 259 S. W. 985, 986, the court says: "The chief inquiry, then, is, Was the payment of the taxes voluntary or involuntary? The trial court found that the payment was involuntary and was made under protest, and we have concluded that the evidence warranted that finding. It was shown that, when the company sought to pay its taxes to the city for the year in question, it sent its check to the collector for the amount of the taxes assessed against it, less the item in question. The tax collector refused to receive this payment, demanding the entire amount assessed for all purposes, which aggregated about $2,000. The company was then confronted with the alternative of paying the questioned item, or defaulting in the payment of the entire amount, upon which the penalties provided by law would thereupon accrue at the rate of 2 per cent. a month. In such situation, and being required to act at once in order to avoid the accrual of the threatened penalty, the company paid the improperly assessed item, with the intention of subsequently taking such steps as would be necessary to recover the amount. The facts stated warranted the finding of the court that the taxes were paid involuntarily and under protest, and, the tax having been improperly assessed, the taxpayer is entitled to recover the amount thus paid."

The appellants were entitled to have the jury determine under the facts whether their payment was voluntary or under protest.

The judgment is reversed, and the cause remanded.