

# THE ATTORNEY GENERAL
# OF TEXAS

JOHN L. HILL
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

November 29, 1973

The Honorable J. W. Edgar
Commissioner of Education
Texas Education Agency
201 E. 11th Street
Austin, Texas 78701

Opinion No. H- 162

Re: Determining amount of
homestead exemption
for persons over 65 and
related questions under
Article 8, § 1-b(b), Texas
Constitution

Dear Dr. Edgar:

Your questions concerning the interpretation and implementation of Subsection (b), § 1-b, Article 8 of the Constitution of Texas, adopted by Texas citizens in November of 1972, are:

1. "Legally, does Subsection (b) of Section 1-b of Article VIII, Constitution of Texas, require that the $3,000 exemption, if and when adopted by a school district, shall be based upon the district's fixed (market) value of the residence homestead, or upon the district's assessed value of residence homesteads based upon a ratio, percentage of true value?"

2. "May a school district board, pursuant to Section 1-b(b) of Article VIII, Constitution of Texas, exempt from district ad valorem taxation any amount of assessed value of the residence homestead of persons age 65 or older, provided that the amount it exempts exceeds $3,000 valuations?"

3. "Is an exemption amount once fixed or determined this year (a) permissably subject to alteration by the same board this year, and/or (b) by future school boards - - the law reading to permit exemption of an amount certain from all ad valorem taxes thereafter levied by the political subdivision?"

4. "If an amendment to the amount of exemption (but not less than $3,000) is permitted, how would the amendment apply?"

The 1972 amendment to § 1-b, Article 8, added subsection (b):

"(b) From and after January 1, 1973, the governing
body of any county, city, town, school district, or other
political subdivision of the State may exempt by its own
action not less than Three Thousand Dollars ($3, 000) of
the assessed value of residence homesteads of persons
sixty-five (65) years of age or older from all ad valorem
taxes thereafter levied by the political subdivision . . . ."

The form in which the Legislature authorized that Subsection (b) be
submitted to the electorate was:

"The constitutional amendment providing that the
various political subdivisions of the State may exempt not
less than Three Thousand Dollars ($3, 000) of the value of
residence homesteads of all persons sixty-five years of age
or older from ad valorem taxes under certain conditions."
(Emphasis added) Section 2, S. J. R. No. 7, Acts 1971,
62nd Leg., R. S., p. 4126.

The term "assessed value", has been uniformly construed by the courts
to mean fair market value or any proportion thereof. Smith v. Davis, 426
S. W. 2d 827, 834 (Tex. 1968). See also Richardson v. State, 53 S. W. 2d 508
(Tex. Civ. App., Eastland, 1932), affirmed 84 S. W. 2d 1076 (Tex. 1935);
Slaughter v. Sundown Independent School Dist., 41 S. W. 2d 478 (Tex. Civ. App.,
Amarillo, 1931); Lively v. Missouri, K. & T. Ry. Co. of Texas, 120 S. W. 852
(Tex. 1909); Attorney General Opinion No. C-402 (1965).

The Legislature used the term "value" in its submission to the voters of
Subsection (b).

The discretion granted the Legislature in submitting a constitutional amend-
ment to the electorate is exceedingly broad:

" . . . the language of the proposition submitted is
not material, provided it substantially submits the
question which the law authorizes with such definite-
ness and certainty that the voters are not misled. "
Turner v. Lewie, 201 S. W. 2d 86, 91 (Tex. Civ. App.,
Ft. Worth, 1947, writ dis'm.) (Emphasis added)

We think the use of the term "value" rather than "assessed value" is sufficiently precise to convey the "intent, import, and subject matter" of the amendment so as not to mislead the voters. See Hill v. Evans, 414 S. W. 2d 684 (Tex. Civ. App. , Austin, 1967, ref. , n. r. e. ); Whiteside v. Brown, 214 S. W. 2d 844 (Tex. Civ. App. , Austin, 1948, writ dism. ). The terms, in certain instances, have identical meanings. "Value", as used in Article 8, §1, of the Texas Constitution and elsewhere, has been held to mean the fair or reasonable market value at the time of assessment for tax purposes. See, for example, Articles 7211, 7149, V. T. C. S. , and Rowland v. City of Tyler, 5 S. W. 2d 756 (Tex. Comm. App. , 1928); Harlingen Independent School Dist. v. Dunlap, 146 S. W. 2d 235 (Tex. Civ. App. , San Antonio, 1940, err. ref'd. ); Atlantic Richfield Company v. Warren Independent School District, 453 S. W. 2d 190 (Tex. Civ. App. , Beaumont, 1970, ref'd. , n. r. e. ).

Therefore, in answer to your first question, we think the $3, 000 exemption provided for in Article 8, § 1-b(b) may be based upon whatever standard of fair market value assessment is utilized by the individual taxing district.

Your second question concerns the power of a school district to provide exemptions in excess of $3, 000. 00 pursuant to § 1-b(b).

The final sentence of § 1-b(b) reads as follows:

> " . . . Where any ad valorem tax has theretofore
> been pledged for the payment of any debt, the taxing
> officers of the political subdivision shall have authority
> to continue to levy and collect the tax against the home-
> stead property at the same rate as the tax so pledged
> until the debt is discharged, if the cessation of the levy
> would impair the obligation of the contract by which the
> debt was created. "

The language of § 1-b(b) clearly grants discretion to a taxing unit to exempt any amount "not less than $3, 000" up to the full amount of the assessed taxable value, except where ad valorem taxes have been pledged and the retirement of a pledge-secured debt would be jeopardized by allowing the exemption. Given the latter situation, no exemption granted would be operative until the debt was discharged. But otherwise there is no limit on the maximum exemption that may be granted.

In answering your third question, we note that you have underlined the word "thereafter" in the amendment, indicating that you question whether the use of this word may have the effect of freezing exemptions once given. We believe the use of "thereafter" merely denotes that the amendment and the exemption granted therein are not to apply retroactively.

In answer to subparagraph (a) of your third question, we believe that once the property is assessed for a year during a time when such an exemption is applicable, the tax must be collected on that basis for that year. Accordingly, the amount of an exemption for a given tax year is not subject to alteration by the same Board in the year it is adopted.

Subsection (b) of your third question concerns the right of future Boards to alter an exemption amount once granted. If the intention of the amendment had been to deny future governing bodies and electorates, once an exemption were allowed, the right to decrease an exemption to $3,000, or to eliminate it entirely, the denial would have been clearly expressed. It is not. Absent such expression, we are of the opinion that future Boards or electorates may alter or discontinue future exemptions.

In answer to your fourth question, it is our opinion that any alteration would have to operate prospectively.

## SUMMARY

1. The $3,000.00 exemption for persons over 65 years of age, established by Subsection 1-b(b), Article 8, of the Constitution of Texas, is to be based upon the assessed value of residence homesteads.

2. The minimum amount of such exemption is $3,000.00, if allowed at all, but the maximum amount is unlimited except by the need to protect the pledged security for debt.

3. An exemption amount once fixed cannot be altered during the year so as to modify the amount of

taxes assessed for that year against property subject
to the exemption, but such exemptions may be abolished
or changed prospectively.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee