## CITY OF WICHITA FALLS v. J. J. & M. TAXMAN REFINING CO., Inc.
### No. 13121.

Court of Civil Appeals of Texas. Fort Worth.

June 15, 1934.

Rehearing Denied Sept. 21, 1934.

J. T. Montgomery. T. R. Boone, and Thelbert Martin, all of Wichita Falls, for appellant.

Weeks, Morrow & Francis and Harry C. Weeks, all of Wichita Falls, for appellee.

John McGlasson, Tom P. Scott, Weatherby & Rogers, and Albert C. Johnston, all of Waco, amici curiæ.

DUNKLIN, Chief Justice.

This suit was instituted by the city of Wichita Falls against the J. J. & M. Taxman Refining Company, Incorporated, to recover taxes claimed on certain real estate, alleged to have been duly and legally levied against the property for the years 1925, 1926, 1927, 1928, 1930, and 1931; and to foreclose a lien for those taxes.

The defendant filed a general demurrer to the petition and also a special answer, alleging certain acts and conduct on the part of the official representatives of the city charged with the duty of assessing and collecting taxes which will be hereinafter noted, by reason of which it was alleged the assessments and all proceedings in connection therewith and the lien asserted were all illegal, void, and unenforceable; and that to enforce the same would be to deprive the defendant of its property without due process of law and would deny it the equal protection of the law guaranteed by both the state and Federal Constitutions. There was a further prayer for a cancellation of the lien claimed by plaintiff as a cloud upon defendant's title.

Plaintiff addressed a general demurrer to that special answer and also filed a general denial of the allegations of fact therein contained. That general demurrer was overruled and plaintiff excepted to that ruling. The case then went to trial before the court without a jury, at the conclusion of which judgment was rendered denying plaintiff any relief and canceling and removing the lien claimed by it as a cloud upon defendant's title to the property in controversy, to all of

which plaintiff excepted and has duly prosecuted an appeal therefrom to this court.

At the beginning of the trial, the following agreement was made by counsel for the defendant:

"The defendant admits that except to the extent that the liability may be voided by the matters set out in its answer, and proof offered in support of those matters, that it is liable to the City of Wichita Falls for the taxes claimed in the plaintiff's original petition, and penalty and interest as prescribed by law, and the foreclosure of liens. * * *

"It is further agreed between counsel that in the event of the unsuccessful defense of this suit for the years 1925, 1926, 1927 and 1928 the defendant will pay the taxes for the years 1929 to 1933, inclusive, according to law, that is, according to the taxes as rendered with penalty and interest as may be prescribed by law."

Following are provisions of the Charter of the City of Wichita Falls:

"Section 7. The City of Wichita Falls shall have power: * * *

"(t) To exercise in addition to the powers enumerated in this section, all powers that now are, or hereafter may be, granted to municipalities by the constitution or laws of the State of Texas; and all the powers of the city whether expressed or implied, shall be exercised and enforced in the manner prescribed in this charter, or when not so prescribed, then in such manner as may be provided by ordinance or resolution of the Board of Aldermen."

"Section 8: The enumeration of powers by this Charter shall not be held or deemed to be exclusive but in addition to the powers enumerated herein implied thereby or appropriate to the exercise thereof the city shall have, and may exercise, all other powers which, under the constitution and laws of Texas, it would be competent for this Charter specifically to enumerate, it being the intention hereof that the powers of the City of Wichita Falls shall extend to all matters of local and municipal government."

"Section 9: All legislative and executive powers of the city shall be vested in a Board of Aldermen and shall be exercised in the manner provided by this Charter."

Section 10 provides that the board of aldermen shall consist of a mayor and five aldermen elected by the city at large and at a general city election.

Other sections of the charter provide for appointment by the board of aldermen of a city clerk, city attorney, city manager, city assessor, and collector of taxes, and a board of equalization.

"Section 65: The City Manager shall have the power to appoint a director of finance to have supervision over the department of finances and to administer the financial affairs of the city, including the levy, assessment and collection of taxes, or other revenues, the custody and disbursement of city funds and moneys, and such other duties as the Board of Aldermen may by ordinance prescribe."

By section 74 the board of aldermen is given the power to levy and collect an annual tax on all property subject to taxation within the city.

"Section 77: The Board of Aldermen shall have the power by ordinance to regulate the mode and manner of making out tax lists, inventories and appraisements of property for taxation, and to prescribe the oath that shall be administered to each person on such rendition of his property, and to prescribe the manner and form of assessment rolls, and to fix the duties and define the power of the City Assessor and Collector, and adopt such measures as the Board of Aldermen may deem advisable to secure the assessment of all property subject to taxation within the city and to provide for the equalization of all taxes assessed."

By section 78 it is made the duty of the board of equalization to examine the assessments for taxes returned by the tax assessor and equalize assessments so made upon all property assessed.

By section 83 a lien is given in favor of the city on all property in the city subject to taxation.

"Section 93: The City Assessor shall list all property which for any cause has not been rendered to him for taxation in such form as may be prescribed by the Board of Aldermen, such valuation thereon as he may deem just, provided same shall not be higher than rendered property of like character. If the owners of such property are unknown to the assessor he shall so state, and such assessments shall be sufficient warrant for the collection of taxes due upon said property by seizure and sale or suit as herein provided for the collection of taxes or other property."

"Section 95: All property, real or personal or mixed, made taxable by the laws of the State of Texas, which is situated in the City of Wichita Falls on the first day of January of each year, and all personal property owned and controlled by persons residing herein and

taxable by law at the place where the owner or agent in charge may reside, shall be subject to taxation by said city for all purposes, provided in this Charter."

Article 8, § 1, of the state Constitution provides: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Chapter 6, title 122, Revised Civil Statutes, provides that all property, real, personal, and mixed, except certain exemptions, shall be subject to taxation, followed by specific provisions for taxation of personal property including intangible assets of different kinds, such as money on hand, credits for deposits in banks, stocks in corporations, promissory notes secured by liens, etc., with directions for ascertaining their assessable values.

Article 7193 provides that in all cases of failure to obtain a statement of real and personal property from the owner from any cause, the assessor shall ascertain the amount and value of the property and assess the same at its true and full value.

Article 7206 describes the duties of the board of equalization, which is in part as follows:

"1. They shall cause the assessor to bring before them at such meeting all said assessment lists, books, etc., for inspection, and see that every person has rendered his property at a fair market value, and shall have power to send for persons, books and papers, swear and qualify persons, to ascertain the value of such property, and to lower or raise the value on the same.

"2. They shall have power to correct errors in assessments. * * *

"4. After they have inspected and equalized as nearly as possible, they shall approve said list or books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same if same be found correct."

Articles 7213–7216 prescribe penalties for the failure of any tax assessor to comply with his statutory duties with respect to obtaining tax renditions, and by article 7216 it is made the duty of the attorney general of the state to institute proceedings for the removal from office of any tax assessor failing to discharge such duties.

The statement of facts filed here is voluminous, covering the testimony of many witnesses, including that of all the aldermen throughout the years in controversy, the tax assessor and his deputy, members of the board of equalization, and many property owners who rendered property for taxes, and much documentary evidence. It will be impossible to give a full review of that evidence, nor do we believe such to be necessary. It is sufficient to state the ultimate material conclusions of fact which are supported by the evidence and on which the defendant relied to sustain the contention that there had been an unlawful discrimination against its property, in that other taxable property had been allowed to escape taxation, and by reason thereof the assessments in question here and taxes levied thereon were void because in violation of the constitutional guaranty that "taxation shall be equal and uniform."

The defendant's property in controversy here did not appear on any of the tax rolls made up by the assessor and submitted to the board of aldermen for the years 1925 to 1928, both inclusive, but was back-assessed after 1928 for all those four years. The city tax rolls for those four years showed assessments of all other real estate in the city and much personal property. Those assessments were made by the assessor in accordance with the renditions by the owners on blanks furnished by the assessor when he called upon them for tax renditions. In some of the renditions, personal property was identified as money, accounts receivable, notes receivable, corporate stocks, etc., while in other renditions the character and kind of personal property rendered was not identified whether as tangible or intangible assets. The evidence also showed that during the years in question a large amount of intangible assets were unrendered and never taxed, consisting of credits in banks for money deposited; promissory notes secured by recorded vendor's lien on land, stocks in corporations, etc. Tax renditions were made to the tax assessor and his deputies at their request, and were accepted as correct and without inquiry as to whether any taxable property had been omitted therefrom. The blanks upon which the renditions were made were printed and furnished to the assessor by the board of aldermen and embodied the usual questions as to various kinds and character of property. The board of equalization then examined and approved the tax rolls and filed them with the board of aldermen, who fixed the rate of taxation upon the total valuation of taxable property as shown by the tax rolls, and levied the taxes accordingly; and the taxes so levied were collected, as authorized by section 74 of the city charter.

In procuring the tax renditions, the assessor and his deputies acted solely upon their own initiative. They made no effort to determine whether or not any taxable personal property had been omitted from the renditions. If they had seen proper to do so, by an examination of the mortgage records of the county, they could have discovered the existence of a large amount of promissory notes secured by mortgage liens having a taxable situs in the city which had never been rendered for taxes or placed on the tax rolls, and therefore escaped taxation by the city. By inquiry at the banks they could have discovered a large amount of credits in favor of depositors, which were not assessed, and by further inquiry could have ferreted out and discovered other taxable intangible assets which were never placed on the tax rolls. They relied upon the correctness of the renditions which were duly executed and verified by the parties making them. The blank rendition sheets furnished by the board of aldermen to the assessor in some instances failed to designate all the specific kinds of personal property that were taxable, thus leaving the same to be included in the general classification of personal property.

The board of equalization, before approving the rolls made up by the assessor, made no attempt to ascertain whether or not any taxable property had been omitted therefrom. Nor did the board of aldermen instruct the assessor to omit any property from the tax rolls, or make any investigation to determine whether or not the tax rolls as made up by the assessor and approved by the board of equalization included all the taxable property within the city. Nor were those duties imposed upon either of those bodies by either the city charter or by the statutes. Davis v. Tax Collector, Burnett, 77 Tex. 3, 13 S. W. 613; County of Galveston v. Galveston Gas Co., 72 Tex. 509, 10 S. W. 583. The evidence offered was insufficient to support the charge made in defendant's special answer that the omission from the tax rolls of other taxable property was due to a deliberate plan and intention on the part of any of those officers to accomplish that result.

The special answer of defendant embodied, among others, these allegations:

"On January 1st of each of said years, towit, 1925, 1926, 1927 and 1928, there was owned by persons, firms and corporations resident and/or taxable in and by plaintiff large amounts of taxable property, consisting of notes, stocks in foreign corporations, accounts receivable, money on hand and on deposit with banks and bankers.

"Defendant alleges, upon information and belief, that the total taxable values and amounts of these classes of taxable property within and/or taxable by plaintiff amounted to at least twenty millions of dollars on the first day of each of said years."

Then follow, among others of like character, these allegations:

"Defendant says that the assessed value of all real estate taxed by the plaintiff for each of said years was approximately twenty-five million dollars per year, and the value of the personal property taxed was approximately ten million dollars per year, and defendant further says that had plaintiff and its said officials and agents made a faithful and bona fide effort to cause to be rendered and/or placed upon the tax rolls and/or assessed for taxes all property located in and/or subject to taxation by said city, particularly money, notes, accounts receivable and stock in foreign corporations, and to collect taxes thereon, the total taxable values for each of said years would have been increased by at least twenty millions of dollars per year and the tax rate upon all property including that involved in this suit, correspondingly lowered. * * *

"Because of these facts said assessments so sought to be enforced by plaintiffs and all proceedings in connection therewith, and the lien claims by plaintiff and each of them, are illegal, void and wholly unenforceable."

In briefs filed by the defendant here, the following is said:

"The taxable value of the real estate taxed by the plaintiff varied from $30,000,000 in 1925 to about $42,000,000 in 1928. The personal property taxed varied from nine and a half million to ten and three quarter millions. * * *

"In short, we submit that the evidence conclusively shows that the following is a most conservative estimate of the amounts which the defendant conclusively established escaped taxation by the plaintiff:

| | |
|---|---|
| Cash .......................... | $10,000,000.00 |
| Notes receivable (including building and loan companies and other similar institutions) ..................... | 20,000,000.00 |
| Stocks in Foreign Corporations | 1,000,000.00 |
| Accounts Receivable ........ | 4,000,000.00 |
| Total .............. | $35,000,000.00 |

"In some years this would run, under the evidence, perhaps $10,000,000.00 more, there-

by equalling, if not exceeding, in value the property actually taxed."

■ If those allegations and calculations, with respect to the values of the property appearing on the tax rolls and the values of taxable property which escaped taxation, be accepted as correct, and if by reason of that discrimination the back assessment and levy of defendant's property for those four years was rendered null and void, leaving the rest of the property on the rolls for the same years to stand unchallenged, then it would follow that the property included in the tax rolls for those four years would be charged with all the burdens of taxation and would leave defendant's property wholly free of any part of those burdens, thus enabling it to profit by a violation of the constitutional guaranty that taxes shall be equal and uniform, now invoked by it as the primary basis of its special defense.

Moreover, if the alleged omission of taxable property from the tax rolls would render void the assessment and levy on defendant's property, then the levies of taxes against all other property appearing on the tax rolls for the same years would likewise be void, and the city would be left without funds to function as a municipal government. That would be no taxation at all, and therefore not within the constitutional provision for equal and uniform taxation. And also in violation of the provisions of section 74 of the City Charter and article 7145 of the Revised Civil Statutes of 1925, making all property in the city subject to taxation by the city; subject to certain statutory exemptions not involved in this suit.

Nor would the defense urged in this suit be strengthened ·even though the evidence had been sufficient to sustain the further allegation that the failure to tax other taxable property additional to such as shown in the tax rolls was the result of a deliberate purpose and plan on the part of the board of aldermen or the board of equalization, or tax assessor, or by all jointly, to enable property not assessed to escape taxation. The defense was not based on allegations that the taxes exceeded the limit allowed by law as provided in subdivision 3 of art. 7329, Rev. Civ. Statutes, with a prayer for injunctive relief against the demand for the excess of taxes. Nor did defendant attempt to fix the amount of such excess and offer to pay the balance as a condition for the removal of plaintiff's claim as a cloud upon title to the property taxed, although according to its own pleadings it justly owed some taxes, at all events. Its claim that it was not liable for any taxes at all was based

on the sole contention that the assessment was void. Altgelt v. City of San Antonio, 81 Tex. 436, 17 S. W. 75, 13 L. R. A. 383; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Atchison, T. & S. F. R. Co. v. Sullivan (C. C. A.) 173 F. 456; Harjim, Inc., v. Owens, 52 F.(2d) 531, by U. S. District Court; Id., 64 F.(2d) 307 (Circuit Court of Appeals); Bistor v. McDonough, 348 Ill. 624, 181 N. E. 417; Valentine v. City of Juneau (C. C. A.) 36 F.(2d) 905.

In Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S. W. 852, 857, intangible assets of the railway company were assessed at their full value, while other property was assessed at two-thirds of its value. The Supreme Court held that to be an unlawful discrimination and reduced the assessment on the intangible assets to two-thirds of their value in order to enforce the constitutional guaranty of equality and uniformity. It was further said: "It is not necessary that the officers in so discriminating should have intended specifically to injure the appellee or other railroad companies. It is sufficient that by their action they denied the appellee the equal protection of the Constitution and laws of the state. The intention with which the acts were done is of no consequence."

In other decisions cited by appellee it was held that an injunction will lie to restrain the collection of excess of taxes against one parcel of property over and above the amount assessed against other property of like kind, but the amount of such overcharge was found to be the difference between the assessments as shown by the tax rolls, and the assessments were equalized, not from testimony of values on the trial, but by reducing the larger assessments as made by the tax assessor to the level of the lower, as was done in the Lively Case. Following are some of the decisions so holding: Boonville Nat. Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, 55 A. L. R. 489; Earnest v. Standefer (Tex. Civ. App.) 54 S.W. (2d) 228; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493; Garza Land & Cattle Co. v. Redwine Ind. School Dist. (Tex. Civ. App.) 282 S. W. 905; Hunt v. Throckmorton Independent School Dist. (Tex. Civ. App.) 59 S.W. (2d) 470; Porter v. Langley (Tex. Civ. App.) 155 S. W. 1042.

In Cumberland Coal Co. v. Board of Revision, 284 U. S. 23, 52 S. Ct. 48, 51, 76 L. Ed. 146, it was held that the deliberate and systematic assessment for taxation of all the coal lands in a township at the same sum per acre, notwithstanding differences in actual or market value due to distances from transportation

facilities and other factors, violated the equal protection clause of the Fourteenth Amendment, although none of such lands were assessed for more than their fair market value. But in the concluding portion of the opinion the court said: "The petitioners are entitled to a readjustment of the assessments of their coal so as to put these assessments upon a basis of equality, with due regard to differences in actual value, with other assessments of the coal of the same class within the tax district."

It thus appears that notwithstanding the discrimination already made, the board of revision still had the right to tax the property upon a reassessment on a basis of equality with other property of like value.

In Iowa-Des Moines Nat. Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265, it was held that the bank was entitled to recover a refund of the excess of taxes exacted and collected as the result of an unlawful discrimination against it in favor of other property of like kind and value. Many other authorities cited are to a like effect as those noted above.

In Hoefling & Son v. City of San Antonio, 85 Tex. 228, 20 S. W. 85, 16 L. R. A. 608, it was held that the city was without power to assess Hoefling for an occupation tax because the statute under which the tax was claimed discriminated against different persons engaged in the same occupation. This decision is manifestly inapplicable to this suit.

In Ogburn v. Ward County Irrigation District (Tex. Com. App.) 280 S. W. 169, 171, a judgment in favor of the irrigation district and against Ogburn for a special assessment of taxes for four years against his land situated in the district was reversed by the Commission of Appeals. The land was never rendered for taxation by Ogburn and was arbitarily assessed according to the zone in which it was located. The assessments so made were approved by the board of equalization of the district, whose duties are prescribed in articles 7666, 7667, and 7673, Rev. Civ. Statutes. In the opinion it was pointed out that the board did not give Ogburn prior notice of its final action, as required by the statutes, and that the assessments were arbitrarily made without regard to market value and grossly in excess of its market value, while personal property was assessed at only 50 per cent. of its market value; and by reason of those facts the assessments were in violation of the constitutional guaranty of equality and uniformity of taxes. The final conclusion reached was as follows: "The total

disregard of the Constitution and laws in appraising property by the special tribunal provided, should, we think, be held to be such jurisdictional defect as should defeat a recovery of the taxes based thereon."

The judgments of the trial court and Court of Civil Appeals were then reversed but the cause was remanded to the trial court, instead of finally disposing of the case by a rendition in favor of Ogburn, which manifestly would have been done if the court had reached the conclusion that the irrigation district had forfeited its right to collect any tax at all by reason of the improper assessment theretofore made. As said by Chief Justice Phillips in Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385, 386, forfeitures "are not favored by the law, and ought not to be." And in this connection we will add that it is the statutory duty of the assessor to post assess all taxable property which has escaped assessment heretofore, including those assets which defendant alleges were improperly omitted from the tax rolls.

Following is quoted from the syllabus of the opinion in City of Houston v. Baker (Tex. Civ. App.) 178 S. W. 820: "Where plaintiffs showed that a plan of taxation which defendant city was about to enforce in violation of the constitutional requirement of uniformity would require owners of unimproved land to pay taxes far in excess of the amount they would have to pay if all property in the city were taxed under the system contemplated by the Constitution and the city charter securing taxation of all property and equal valuation of all classes of property, equity would interfere to restrain a further operation of the city's tax plan."

The injunction there involved was merely to restrain the execution of a plan to assess property unlawfully; but the right to make a proper assessment was not denied, on the contrary, was impliedly recognized, as we believe is true of all other decisions which have come to our attention.

We believe it is clearly deducible from all the decisions that the right of relief from assessments made in violation of the constitutional guaranty of equality of taxation, or the denial of the due process of law clause in the Fourteenth Amendment of the Federal Constitution, in failing to give the owner an opportunity to be heard on a proposed assessment, is limited to the excess over and above the amount properly assessable on an equality basis; which is the limit expressly fixed in subdivision 3 of art. 7329, Revised Civil Statutes of this state. And, further, that

the government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable.

For the foregoing reasons, it becomes unnecessary to determine what would have been the proper manner of assessing the various kinds of intangible assets that defendant alleged were improperly omitted from the tax rolls.

Accordingly, the judgment of the trial court is reversed in its entirety, and judgment is here rendered in favor of the city for the taxes sued for, with a foreclosure of lien therefor on the property in controversy.

### On Motion for Rehearing.

The suit for taxes for the years 1930 and 1931 was abandoned by reason of the agreement of counsel for defendant, as shown in our opinion on original hearing, that the defendant would pay taxes for the years 1929 to 1933, inclusive, in the event it should fail in its defense against the suit for the years 1925 to 1928, inclusive.

The statement in the original opinion that the taxes claimed for the years 1925 to 1928, inclusive, were all post assessed was inaccurate, and it is hereby withdrawn. The plaintiff alleged that the property assessed for those years was on the current tax rolls; that for two of those years the property was rendered by the owner, and for the other two was listed and assessed as belonging to an unknown owner. Appellee now calls attention to that inaccuracy in our original opinion in connection with the further statement that no proof was offered to sustain those allegations and that none was offered to refute them, with this further statement: "These matters may be minor, but since they are wholly contrary to the evidence, we believe it is justly due the appellee that they be corrected."

And we deem it proper to add that no point was made on the trial of the case on the failure of the city to introduce proof to sustain those allegations.

■ Upon a further review of the record, we have reached the conclusion that the testimony of the tax assessor, to the effect that his custom was to accept as correct the renditions by property owners without making any attempt to discover whether other assets owned by the same owners were included in the renditions, and his failure to take any steps to assess other available assets of which he had knowledge, or in the proper discharge of his duties should have been discovered—all was legally sufficient to support an implied finding by the trial court that such failure of duty on the part of the assessor amounted in law to an intention to allow the omitted assets to escape taxation altogether, and, therefore, an intentional discrimination against the owners of property that was properly assessed. However, after a further examination of the charter of the city of Wichita Falls, we are convinced of the correctness of our former conclusion, to the effect that no duty was imposed by it upon the board of aldermen or the board of equalization to require the tax assessor to place on the rolls other property which had been omitted therefrom; the extent of their duties being to see to it that the property appearing on the rolls submitted to it by the assessor was assessed at its reasonable market value and on an equality basis.

However, whether or not the board of equalization and the board of aldermen, as well as the city assessor, intended that property not appearing on the tax rolls should escape taxation is unimportant, since, as stated by the Supreme Court in Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S. W. 852, referred to in original opinion, such intention on the part of any or all of those officers is of no consequence if in fact the defendant was denied equal protection of the Constitution and laws of the state.

Appellee cites the cases of Gilman v. Sheboygan, 2 Black (67 U. S.) 510, 17 L. Ed. 305; Reelfoot Lake Levee District v. Dawson, 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725, by the Supreme Court of Tennessee; and Wells v. Com'rs of Hyattsville, 77 Md. 125, 26 A. 357, 20 L. R. A. 89, by the Court of Appeals of Maryland, and insists that they are in point here. In each of those cases it was held that a legislative act which by its terms required the levy of taxes on certain kinds of property and exempted other property was unconstitutional because of unjust discrimination and therefore void. Those decisions are not in point here for the reason that the legislative acts, which were the sole bases for the assessments, were void, while in this case the defense was based upon an alleged unauthorized discrimination by the officers elected to assess the taxes.

■ Counsel for appellee has this to say: "But, if it be true, as this Court says, that according to our pleadings we justly owe some taxes, then there is, we submit, no legal obstacle whatsoever which prevented the

trial court or which prevents this Court from reducing the plaintiff's demand down to the amount which we owe under the circumstances established in this case; and, if the record is not complete enough for that, it is plainly the duty of the Court not to render the case but to reverse it for the development of such testimony.

"If our defensive claims are too broad, that of itself does not entitle plaintiff to·recover the full amount sued for, but the amount of plaintiff's recovery must be determined under all of the facts established."

That presents here for the first time, and on this motion for a rehearing, a different theory of defense from that on which the case was tried in the court below. The failure of the assessor to include upon the tax rolls other property which was likewise subject to taxation was alleged. Following those allegations of fact at great length, the answer contained the following: "Because of these facts said assessments so sought to be enforced by plaintiffs and all proceedings in connection therewith, and the lien claims by plaintiff and each of them, are illegal, void and wholly unenforceable."

And by way of cross-action the defendant further prayed for a cancellation of the lien claimed by the city upon the property in controversy, all because of allegations that the same was void and unenforceable by reason of the omissions from the tax rolls of other taxable assets. As noted already, the court rendered a judgment denying the city any recovery for the taxes and canceled its alleged tax lien as a cloud upon defendant's title; all in accordance with defendant's pleadings.

In 3 Tex. Jur. pp. 168 to 176, the rule is announced that on appeal the parties are restricted to the theory on which the case was tried in the lower court, and that the construction placed by the parties appealing from the trial court will ordinarily be adhered to in the appellate court, and on page 172 this is said: "The parties on appeal may not present a theory in regard to defenses different from that interposed in the trial court by proper pleadings and proof."

Article 7329, Rev. Civ. Statutes, reads:

"There shall be no defense to a suit for collection of delinquent taxes, as provided for in this chapter except:

"1. That the defendant was not the owner of the land at the time the suit was filed.

"2. That the taxes sued for have been paid, or

"3. That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess."

The answer of defendant does not give any sufficient basis for determining with reasonable certainty any excess taxes over and above what it legally owed if all taxable property had been assessed, and the same is true of the evidence introduced; to say nothing of the further question as to what would be the equities in favor of those property owners who have already paid their taxes and who were not parties to the suit, to be placed on an equality basis with appellee, in the event the court should attempt to require an assessment of all the taxable properties that have been omitted from the tax rolls and therefore have escaped taxation.

The motion for rehearing is overruled.