**LUBBOCK HOTEL CO. et al. v. LUBBOCK INDEPENDENT SCHOOL DIST. et al.**

No. 4287.

Court of Civil Appeals of Texas. Amarillo.

April 29, 1935.

Rehearing Denied Sept. 9, 1935.

Syrian E. Marbut and L. A. Howard, both of Lubbock, and Goggans & Keith, of Dallas, for plaintiffs in error.

Clyde F. Elkins and Bledsoe, Crenshaw & Dupree, all of Lubbock, for defendants in error.

MARTIN, Justice.

The parties here will be designated as in the trial court.

Plaintiff sued defendants for the collection of delinquent taxes for the years 1930, 1931, and 1932, and for foreclosure of its tax lien.

The answer of defendants is lengthy and the substance only of their contention will be here repeated. In the first count it is alleged that the assessment against defendants' property was void for each of said years because in violation of the constitutional provision guaranteeing and requiring uniformity and equality of taxation; that the plaintiff adopted and carried into effect an arbitrary zoning system for the city of Lubbock, which had the effect of arbitrarily fixing values in disregard of the true market value of such properties; that as to personal property the plaintiff arbitrarily fixed a value of $30 per head on all dairy cattle when their true market value was $100 per head, and arbitrarily refused to tax the notes and bills receivable of all banks and building and loan associations within the city of Lubbock; that plaintiff attempted to tax defendants on 75 per cent. of the market value of their property while other property similarly situated was taxed at less than such percentage of its true value, and particularly said dairy cattle. They rendered their property at $100,000 and claimed the right to pay on only such value, and tendered in their pleadings the amount necessary to pay on such value. Their prayer in the first count was: "Wherefore, premises considered, the defendants pray that the plaintiff take nothing by its suit; that the defendants be permitted to go hence without day and that they recover their costs in this behalf expended."

By way of cross-action defendants again pleaded the facts showing discrimination against them, alleged that the assessment was absolutely void and prayed: "Wherefore, premises considered, the defendants pray that the cloud cast on the title to the defendants' said property be removed and that said taxes lien claimed by the plaintiff be vacated and removed, and set aside and that the costs of these proceedings be taxed against the plaintiff."

The trial court submitted only the following issue: "Do you find by a preponderance of the evidence that in the matter of taxes the Lubbock Independent School District discriminated against the property of the defendant in this case?" to which the jury answered "No"; whereupon judgment was entered for plaintiff as prayed for.

■ Many of defendants' propositions assert merely that plaintiff adopted an arbitrary and fundamentally wrong system of fixing the values of real estate. It is not alleged in such propositions, nor attempted to be shown in supporting statements, that the effect or operation of such system resulted in any injury to appellants, nor in any discrimination against them. A mere theory may not be litigated. For aught that appears in and under many of defendants' propositions, the actual working of the allegedly wrong system may have actually resulted in equality and uniformity of taxation. There must be more than the mere adoption of a fundamentally wrong principle or method of taxation. The courts grant relief upon "the adoption of a fundamentally wrong principle or method, *the application of which substantially injures the complainant.*" (Italics ours.) Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756, 760. All these are overruled without further discussion.

Defendants vigorously contend that a peremptory instruction should have been given in their favor, and we dispose of this contention upon the assumption that sufficient propositions and supporting statements appear in the brief to challenge our attention and require us to consider and dispose of the question stated.

We preface our discussion with the following: Article 8, § 1, of the State Constitution provides, "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

■ The good faith of tax officials is presumed, and the burden of proof is upon complainant to establish a violation of the constitutional guaranty of uniformity. Sunday Lake Iron Co. v. Wakefield Tp., 247 U. S. 350, 38 S. Ct. 495, 67 L. Ed. 1154.

■ Absolute or perfect equality and uniformity in taxation being impossible of attainment, is not required. 61 C. J. 105. "The mere fact that the property of one party is assessed at its full value, and that of others at less than its full value, when the statute authorizes no such discrimination, raises no constitutional question, and for the courts to interfere in such a case on constitutional grounds it must appear that a rule or system of valuation had been adopted by those whose duty it was to make the assessment, which was designed to operate unequally and to violate a fundamental principle of the constitution, and that such rule had been applied, not solely to one individual, but to a large class of individuals or corporations." 26 R. C. L. p. 247.

See, also, Coulter v. Louisville, etc., R. Co., 196 U. S. 599, 25 S. Ct. 342, 49 L. Ed. page 615; Sunday Lake Iron Co., v. Wakefield Tp., supra.

"Mere omissions or errors of judgment of taxing officials in the exercise of an honest judgment, will not invalidate an assessment." 61 C. J. p. 120.

■ Fraud may be implied from the existence of a grossly excessive assessment. 61 C. J. 856. The existence of fraud on the part of taxing officials will, of course, vitiate an assessment, but "in order that there be fraud, there must exist on the part of the assessing officials, a conscious failure to exercise that fair and impartial judgment which the law requires of them." 61 C. J. 856. As indicating generally the views of the Texas courts, see: Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493; Brundrett v. Lucas (Tex. Civ. App.) 194 S. W. 613 (writ ref.); Sparks v. State (Tex. Civ. App.) 27 S. W.(2d) 918, 919; Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131; City of Wichita Falls v. J. J. & M. Taxman Ref. Co. (Tex. Civ. App.) 74 S.W.(2d) 524 (writ ref.).

■ We turn now to an application of these well-established legal principles to the facts of this case. The valuations for the years in controversy, placed by the equalization board acting for plaintiff on defendants' property, were as follows: For 1930, $439,920; for 1931, the same; for 1932, $351,940. Defendants introduced no testimony whatever as to its reasonable cash market value for either of said years.

Nor do we find any evidence cited in defendants' brief of either the assessed or market value of property similarly situated in the City of Lubbock. The only evidence relating to the subject was introduced by plaintiff and consisted of a court admission by defendants that their properties were of the reasonable and fair value of $900,000, and was one of the most complete and largest hotels in West Texas. The only fair inference to be drawn from the evidence of equalization board members is, in our opinion, that the board endeavored to assess defendants with other property in Lubbock at 75 per cent. of its true value; that they considered certain elements as entering into this valuation, which seem to be in accord with those set out in Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756; that they used in aid of their work, the report of Stoner, who had apparently zoned the city and compiled data as to the respective values of property within such zone; that a key position was used and a 100 per cent. value placed thereon from which point property values graduated downward; that such system was not adopted, but merely referred to and used in aid of the work of the board. As applied to real estate within the plaintiff district, we have been cited to no evidence and have found none that would justify the conclusion that defendants had been discriminated against in property valuations, to their injury. Rather it is inferable that the valuations placed by the board for the said years was from about 40 per cent. to 45 per cent. of the true valuation rather than 75 per cent. No evidence whatever is cited by defendants to show a discrimination between their property and that of others similarly situated as to assessed valuations, from which it is deducible that defendants have been injured by the action of plaintiff's said board. This statement applies to real estate valuations only. As to personal property, it is shown that bank and building and loan notes were entirely omitted from the tax rolls because of the opinion of attorneys that such property was not taxable. It further appears that dairy cows were rendered for taxes by some five or six different individuals at prices ranging from $10 up to $30, and that dairy cattle were worth about $100 per head. The board apparently, without question, took the values placed thereon by the respective owners, acquiesced in and in some instances suggested by the tax assessors

working for plaintiff. The evidence goes no further than to show the renditions of these particular individuals, and that in these specific instances the valuations were much too low. The inference that such valuations were the result of any scheme or purpose to discriminate in favor of such owners is not a fair or legitimate one. The valuations varied with each individual. Renditions of other owners were not shown. The net benefit to defendants, if all these were raised to 75 per cent. of their true value, would be an insignificant sum. The Supreme Court of Texas approves the language quoted above, that the injury must be "substantial" if relief is to be afforded. The record as a whole, in our opinion, and in the light of the above-quoted rules, would support only a finding that there was no discrimination against defendants' property in fixing the valuations aforesaid, in the sense of the constitutional requirement of uniformity of taxation.

Measured by the above rules, we are of the opinion that the judgment entered in this case was the only legal one that could have been entered under the facts exhibited in this record.

▌ If we are mistaken in this, the court submitted in a way, perhaps incorrectly and too generally, the issue of discrimination, to which the jury responded as above indicated. The issue, as thus submitted, was apparently acquiesced in by defendants, as no objection or exception thereto of any kind appears in the record. Defendants requested the submission of certain special issues, all of which, in our opinion, were defective and erroneous. None were in accord with, but all violated, some one or all of the legal principles laid down above, as governing cases of this character.

"Where the court has actually submitted the defense, though in general terms, it is not error to refuse a requested issue which is incorrect. The defendant must, at his peril, present a properly drawn issue for submission." Freeman v. Galveston, H. & S. A. R. Co. (Tex. Com. App.) 285 S. W. 607, 608.

▌ Finally, we call attention briefly to the exact issues present before the trial court, as made by the pleadings. For the plaintiff: The existence of unpaid and past-due taxes, assessed by a board having jurisdiction of the subject-matter and se-

cured by a statutory lien upon the property. For the defendants: Allegations, first, of discrimination which it is claimed rendered such assessment entirely void, and entitled defendants to pay only on its rendition, the amount of which was tendered; second, that such discrimination rendered such assessment entirely void and entitled defendants to a cancellation of said statutory lien without any payment of taxes. The prayer quoted contained no request for any general, special, or equitable relief. There was neither pleading nor proof that could be made the basis for relief against a tax levy in excess of the amount properly assessable on an equality basis.

The assessment was not absolutely void in the sense that plaintiff lost its right to all taxes on defendants' property. The equalization board, under the facts of this record, had jurisdiction to equalize the taxes among the respective owners of property in the district, and the governing body the legal right to make an assessment, it affirmatively appearing here that all statutory requirements were complied with. Plaintiff pleaded and proved a prima facie case entitling it to the relief prayed for. The trial court had the three alternatives under the pleading and proof, which we mentioned above. Manifestly, it could neither relieve defendants of all taxes nor permit payment on a rendition of $100,000 valuation. Both of these would violate the constitutional mandate of uniformity and equality of taxation. Defendants asked for no other relief. The most that can be deduced from this record in favor of defendants is that the taxing officials intentionally omitted bank and building and loan notes from its assessment and purposely undervalued some dairy cattle. These facts do not render the assessments under attack wholly void. We quote: "It is clearly deducible from all the decisions that the right of relief from assessments made in violation of the constitutional guaranty of equality of taxation, * * * is limited to the excess over and above the amount properly assessable on an equality basis. * * * And, further, that the government does not lose its right to taxes justly owing on one parcel of property, by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable." City of Wichita Falls v. J. J. & M.

Taxman Ref. Co. (Tex. Civ. App.) 74 S. W.(2d) 524, pages 529, 530 (writ ref.).

The application here of the principles announced in this case could lead, it seems, to no other result than an affirmance of the present one.

This case was tried below upon the defensive theory that defendants either owed no taxes or in any event not more than the amount due under its rendition. They are restricted here to the same theory. Wichita Falls v. J. J. & M. Taxman Ref. Co. (Tex. Civ. App.) 74 S.W.(2d) 524; 3 Tex. Jur. pp. 168–176.

For all of the three reasons discussed, we are of the opinion that a correct judgment was rendered in the trial court, and it is accordingly affirmed.