**RANDALS et al. v. STATE.** (No. 2289.)

Court of Civil Appeals of Texas. El Paso. March 16, 1929.

H. G. Russell, of Pecos, for plaintiffs in error.

William L. Kerr, of Pecos, for the State.

PELPHREY, C. J. Plaintiffs in error rendered sections Nos. 2, 10, and 12, in block 6, H. & G. N. Railway Company survey, situated in Reeves county, Tex., to the tax assessor of Reeves county at $1.25 per acre valuation for state and county taxes for the year 1927.

At the regular meeting of the board of equalization of Reeves county the valuation of said lands was raised to $350 per acre, and Randals was notified of that fact. Randals appeared and protested against said raise, but the board refused to reduce said valuation as raised.

On April 17, 1928, suit was filed by the county attorney of Reeves county to recover the taxes then delinquent on said property. Plaintiffs in error answered by general demurrer, general denial, and specially pleaded that the valuation had not been equalized according to law; that a blanket valuation had been placed on all river lands without regard to the value thereof; that the board had overvalued the land to almost three times its real, cash, or market value; that the tax is not equal and uniform; that the personal property in or near the land of plaintiffs in error was assessed at from its market value to less than one-half of same; and that the valuation so fixed by the board was unfair, it being erroneous, false, and fraudulent and so fixed in order to force plaintiffs in error to pay a greater amount of taxes than other people.

The case was tried before the court without a jury and resulted in a judgment in favor of defendant in error for $95.06, and Randals and wife have appealed to this court by writ of error.

Upon the trial it was developed that the board of equalization had fixed a valuation of $3.50 per acre on all watered land where it joined the river; that that was the only basis of assessment used by the board on such lands; that dry grazing land which did not adjoin the river was valued at $1.25 per acre; that alfalfa lands were valued at $25 per acre, row crop land at $15 per acre, cultivated land with alfalfa at $25 per acre, and land under the ditch but not in cultivation $10 per acre; that such rule was the only one used in fixing valuations all over the county by the board; that the board paid no attention to improvements; that bank stock was assessed at five-eighths of its book value; that personal property and town property were assessed at five-eighths of their reason-

able value; that all the farm land in Reeves county is not of the same value; that there is some cotton land worth $75 per acre and some alfalfa land worth from $125 to $150 per acre; that there is as much as 500 acres of land in the county worth $75 per acre or more; that there is 5,000 acres of grazing land in the county worth $5 per acre or more; and that the land of plaintiffs in error was worth $8 or $8.50 per acre.

The above amounts and values were testified to by the tax assessor of Reeves county, and are uncontradicted except as to the value of the land of plaintiffs in error.

This question was settled, however, by the finding of the court that its value was $8 per acre.

■ To assess the property of one or a few owners at a materially higher percentage of its value than the percentage of the value at which the property of a great majority of the owners in the county is assessed is unconstitutional, and, especially if done in pursuance of some custom, system, or scheme in which values are not ascertained as provided by law. Lively v. M. K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852, City of Houston v. Baker, et al. (Tex. Civ. App.) 178 S. W. 820.

■ In the present case it appears conclusively that the board of equalization in fixing the values on the different kinds of land in the county gave no consideration to either the character of the land or the improvements thereon. We think we are justified in taking judicial knowledge of the fact that all lands, especially in West Texas, even of the same character, are not of the same value.

Article 8, § 1 of the Constitution provides that: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

■ Article 7174, Revised Statutes 1925, provides, in substance, that each separate parcel of land shall be valued at its true and full value, and that the assessor's duty is to value each tract or lot by itself at the price he believes it to be worth at the time of assessment.

Article 7206, subd. 3, Statutes of 1925, directs the board of equalization: "That they shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible."

It can plainly be seen from the record of this case that the assessor made no effort to arrive at the true and full value of each tract of land in the county, and equally easy of discernment that the board of equalization made no effort to separate the lands into the classes above mentioned. The method used by the board of equalization is in direct conflict with the method the law provides. The system adopted resulted in plaintiffs in error's land being valued at a fraction over 43 per cent. of its true value, while as much as 5,000 acres of grazing land in the county was valued at only 25 per cent. of its true value. It further shows that alfalfa lands were valued at from 16⅔ per cent. to 20 per cent. of its value, and that some cotton land worth $75 per acre was valued at $15 per acre, or only 20 per cent. of its value.

The facts establish the fact that the system used did not result in making the taxation in the county equal and uniform as provided for in our Constitution, and the result being further to impose on plaintiffs in error more than, their share of the burden of taxation, the valuation so fixed should not be allowed to stand.

Defendant in error contends that the action of the board of equalization is quasi judicial in its nature and a collateral attack cannot be justified in the absence of fraud or something equivalent thereto. There are many authorities holding adversely to that contention and the authorities cited by appellee involve merely a difference of opinion as to the reasonableness of the valuations of boards of equalization.

In a case such as the one we now have under consideration the following authorities support the proposition that the courts will interfere to afford to property owners the protection granted by our Constitution and laws: Ogburn v. Ward County Irr. Dist. No. 1 (Tex. Com. App.) 280 S. W. 169; Brown et al. v. First Nat. Bank of Corsicana (Tex. Civ. App.) 175 S. W. 1122; Jayton Ind. School District v. Rule-Jayton Cotton Oil Co. (Tex. Civ. App.) 259 S. W. 631; City of Sweetwater v. Biard Development Co. (Tex. Civ. App.) 203 S. W. 801; City of Houston v. Baker (Tex. Civ. App.) 178 S. W. 820.

Believing that the facts of the case showing the valuation fixed by the board on plaintiffs in error's land to be unequal, arrived at in a manner other than the method prescribed by law, and in violation of the plain provisions of our Constitution, the judgment of the trial court should be reversed and the cause remanded; and it is so ordered.

Reversed and remanded.