## HUNT v. THROCKMORTON INDEPENDENT SCHOOL DIST.

### No. 1097.

Court of Civil Appeals of Texas. Eastland.
April 7, 1933.

E. G. Thornton, of Olney, for appellant.

Jno. Lee Smith, of Throckmorton, and A. H. Carrigan, of Wichita Falls, for appellee.

LESLIE, Justice.

This is a suit by the Throckmorton Independent School District against E. W. Hunt for the collection of school taxes assessed against his property as of January 1, 1930. The property involved was 8,856 acres of ranch land situated in the district. He tendered to the tax collector, and into court at the trial of this case, an amount based upon his personal rendition of said land at the value of $7.50 per acre. The tender was received without prejudice to the contentions of either litigant, and the trial before the court without a jury resulted in a judgment for the plaintiff for the amount of $484.37 over and above the plaintiff's tender, and in accordance with the valuation placed upon his land by the district's board of equalization, and for foreclosure of lien, etc. The defendant appeals, and the parties will be referred to as in the trial court.

The judgment ought to be affirmed unless the testimony given by the plaintiff's witnesses compels a different conclusion. The defendant presents two propositions, and they make, in substance, the same contention, that the undisputed testimony discloses that the school district's board of equalization adopted an illegal plan or system of valuing property in the district which denied him the benefit of equal and uniform taxation, and amounted to a discrimination against him in the valuation of his ranch lands as compared with the values accepted by the board under the plan for (1) other ranch lands; (2) farm lands; (3) city property; and (4) cattle, situated in the district.

Article 8, § 1 of the Constitution of Texas provides: "Taxation shall be equal and uniform. All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Pursuant to the above authority the Legislature enacted article 7206, R. S. 1925, and

the third section thereof is as follows: "They shall equalize improved lands in three classes, first-class to embrace the better quality of land and improvements, the second-class to embrace the second quality of lands and improvements, and the third-class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second and third class, and all other property made as nearly uniform as possible."

The board of equalization (referred to as the board), after due notice to Hunt, and over his protest, raised his property renditions on said land from $7.50 to $12.50 per acre. Against the district's asserted right to collect taxes upon such enforced valuation, Hunt defends upon the ground that the board, in raising the value of his land, acted arbitrarily, illegally, and in an unconstitutional manner, in that (1) it ignored the provisions of article 7206, R. S., and especially subdivision 3 thereof above set out; (2) that it made a blanket valuation of farm lands in the district for the year of 1930, without reference to the character, location, or improvements at $15 per acre, when in fact such lands ranged on January 1, 1930, from $30 to $60 per acre; (3) that as to ranch lands in the district on said date, the board made a blanket valuation of $12.50 per acre, when in fact such lands had a value ranging from $10 to $30 per acre; (4) that like discrimination was made in the valuation of cattle, which was taken at $20 per head, when in fact their values ranged on said date from $25 for common cattle to $200 for registered cattle; (5) that city property in the district at said time was taken at one-third of its value, whereas his ranch land was assessed at its full market value, at least; (6) that the foregoing conduct and procedure on the part of the board resulted in injury to the defendant, rendering its act in raising the valuation of his property void.

By reference to the statement of facts we find that the three members of the board of equalization, J. W. Weaver, C. E. King, and J. C. Dawes, among other witnesses, testified in behalf of the plaintiff. It goes without comment that we find the defendant's contentions abundantly supported by the testimony coming from him and his witnesses, but, as remarked in the outset, we are essentially concerned with the uncontroverted facts established by the testimony adduced from the plaintiff's witnesses. We will not extend the length of the opinion by quoting verbatim from the statement of facts, but shall content ourselves with the substance thereof.

██ Weaver testified the board put all farm lands in the district at $15 per acre and pasture and ranch lands at $12.50 per acre, except 20 sections of the Swinson ranch, valued at $10 per acre; that the board did not take every separate piece of property in the district and distinguish the difference in it and the other properties, and set an equal value on that particular piece of property; that the farm lands in the district were taken at $15 per acre without reference to improvement and distance from town; that ranch lands, without reference to location or improvement, were taken at $12.50 per acre, except the 20 sections of Swinson ranch taken at $10 per acre; that some ranch lands were near town, well improved; that others were 10 or 12 miles from town, without improvements; that some ranch lands had better water supply than others, and some had natural water on them; that pasture lands were put on an equality; that the board did not take farm land and divide it into three different classes, and did not take ranch lands and divide them into three different classes, and did not take unimproved lands and divide them into three different classes; that they classified ranch lands in one classification and farm lands in another, and other lands as best they could; that on January 1, 1930, farm lands in the district had an average valuation of $30 an acre, and that all such lands in the district were arbitrarily valued for tax purposes at $15 per acre; that they did not attempt to put a 100 per cent. valuation on town property, but figured it "about 50 per cent."; that ranch lands were something about equal.

The witness King testified substantially as did Weaver, that the board took farm lands, irrespective of the difference in value, at $15 per acre; that ranch lands except said 20 sections, and irrespective of value, were taken at $12.50 per acre; that the board did not attempt to divide the improved and unimproved land into three classes for the purpose of valuing the same; that the Hunt lands were worth from $12.50 to $15 per acre; that the Boyd farm taken at $15 an acre was worth $40 an acre; that the Falls farm was worth $30 an acre, and the King farm $25 an acre; that ranch lands, irrespective of difference in value, were likewise taken at $12.50 an acre, with the exception mentioned.

The witness Dawes testified that the board put most of the ranch lands, without regard to difference in improvements, at the same price; that the lands in the district were not classified unless the 20 sections of the Swinson ranch were so treated; no attempt was made to value the town property at 100 per cent. of its value, but an attempt was made to value it at 75 per cent. of its value; that ranch lands in the district were arbitrarily valued at $12.50 per acre, and farm lands in the district at $15 per acre; that the Hunt ranch was worth $15 per acre, with the improvements on it.

Testimony as to the value placed upon various specific farms was given. Such lands,

with two exceptions, ranged in values from $30 to $50 per acre. One farm was valued at $25 per acre by one witness and as high as $35 per acre by another, while a second farm was valued at $25 per acre by one witness and a member of the board, and as high as $35 by another witness.

The testimony of at least two members of the board of equalization established that the city property was assessed at 50 per cent. of its value. One of the members testified that they attempted to assess it at 75 per cent. of its value, but an examination of the value placed on several distinct pieces of city property discloses that it was taken at 50 per cent. or less.

From the foregoing it conclusively appears that there is a want of equality and uniformity in taxation in such school district as applied to defendant's lands directly traceable to the unwarranted plan or system used by the board in valuing said lands for the year of 1930. Assuming his ranch lands to have a fair market value of $12.50 per acre, it is obvious that the amount of money he has tendered into court on the basis of his renditions at $7.50 per acre, amounts to a payment on a valuation of 60 per cent. of the market value of his lands. To say the least, this is a greater rate of taxation than that levied against farms and city property. As compared with other ranch lands we are of the opinion that no discrimination or lack of uniformity in valuation is necessarily shown, but as compared with the valuations placed on farm lands and city property by the board, the defendant makes out a clear case on his contention that the board arbitrarily adopted a system of valuation which resulted in fixing upon his property a value without regard to and in violation of the principle of uniformity and equality required by the Constitution. Hence we sustain the defendant's propositions. The law applicable to the facts of the case is clearly stated in the following authorities, which compel the conclusions reached, and as above stated: Article 8, § 1, Constitution of Texas; article 7206, R. S. 1925; Randals v. State (Tex. Civ. App.) 15 S.W.(2d) 715; Slaughter et al. v. Sundown Ind. School Dist. (Tex. Civ. App.) 41 S.W.(2d) 478; Lively v. M., K. & T. Ry. Co., 102 Tex. 545, 120 S. W. 852, 857; Langlay v. Smith, 59 Tex. Civ. App. 584, 126 S. W. 660; Weatherly Ind. School Dist. v. Hughes (Tex. Civ. App.) 41 S.W.(2d) 445; Town of Pleasanton v. Vance (Tex. Com. App.) 277 S. W. 89; Garza Land & Cattle Co. v. Redwine Ind. School Dist. (Tex. Civ. App.) 282 S. W. 905; City of Houston v. Baker (Tex. Civ. App.) 178 S. W. 820; Power v. Andrews (Tex. Civ. App.) 253 S. W. 870; Richardson v. State (Tex. Civ. App.) 53 S.W.(2d) 508; Rowland v. City of Tyler (Tex. Com. App.) 5 S.W. (2d) 756.

■ While there is no evidence that the board of equalization purposed to do the defendant individually any harm, nevertheless "the intention with which the acts were done is of no consequence" (Lively v. M., K. & T. Railway), and, since the plan adopted was fundamentally wrong and necessarily worked an injury to the defendant, he was entitled to the relief sought. Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756; Druesdow v. Baker (Tex. Com. App.) 229 S. W. 493: Brown v. First Nat'l Bank (Tex. Civ. App.) 175 S. W. 1122.

■ Uniformity in taxation throws the proper burden of taxation on each individual taxpayer, and the principle should never be departed from. The greatest benefit comes to each and all when it is scrupulously observed. The value of property is the correct standard of uniformity and the Constitution has so fixed it. Taxation cannot be in proportion to the value of property unless the value of all property is ascertained by the same standard. Lively v. M., K. & T. Ry. Co.

This is not a case where the evidence goes no further than to raise an issue of fact as to whether or not the assessment was excessive, or where the values under attack arise out of a mere difference of opinion. Hence such authorities as Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131, relied on by the plaintiff, are not deemed controlling here.

We have above referred to certain testimony adduced on the trial, but the testimony generally in connection with that specifically referred to, when properly and reasonably construed, discloses that the defendant's property was valued at 100 per cent. of its market value on January 1, 1930, whereas other property in the district, namely, farm lands and city property, were taken at 50 per cent. or less of their value. The plan adopted and above discussed logically led to inequality and discrimination. Further, if it be held that the market value of defendant's ranch on January 1, 1930, was $15 per acre, the highest value placed thereon by any witness, the result would be the same. For the defendant that would be taxation on the basis of 83⅓ per cent. of the value of his property, and it would conclusively appear that the same vice complained of was still present in the case.

For the reasons assigned the judgment of the trial court will be reversed and judgment here rendered in favor of the defendant, and that plaintiff take nothing by the suit. It is so ordered.