**POTEET, Judge, et al. v. W. T. WAGGONER ESTATE et al.**

No. 4629.

Court of Civil Appeals of Texas. Amarillo.

July 3, 1936.

Rehearing Denied Sept. 7, 1936.

Curtis Renfro and O. T. Warlick, both of Vernon, and Kearby Peery and T. R. Boone, both of Wichita Falls, for appellants.

Seth Cockerell, of Seymour, and Kilgore & Rogers, all of Wichita Falls, for appellees.

MARTIN, Justice.

Appellee brought an injunction suit against the county judge and four county commissioners composing the board of equalization of Wilbarger county, its county attorney and tax collector, seeking to enjoin the collection of taxes assessed against certain oil lands belonging to relator in said county, and for judgment declaring such assessment void.

Its petition is rather lengthy, and only that portion relating to the point hereafter discussed, will be noticed. After the usual averments, not material here, it is therein alleged:

"That in equalizing the taxes of other properties in Wilbarger County, Texas, there is a substantial amount of improved cultivated real estate in said county. That on January 1, 1934, such improved cultivated lands situate in Wilbarger County, Texas, had a reasonable cash market value of $100.00 per acre, that plaintiff was not the owner of any such land in said county on said date, but that numerous other persons did own such land, among such persons being the defendant C. McCaleb who owned 101½ acres of such highly improved tillable land, the defendant J. F. Gregory who owned 1037 acres of such highly improved tillable land, the defendant R. Cobb who owned 158½ acres of such highly improved tillable land, and the Honorable W. N. Stokes, Judge of the 46th District Court, who owned 160 acres of such highly improved tillable land, all in Wilbarger County, Texas. That numerous other persons are similarly situated owning highly improved tillable land in said county. That such tillable land so owned by the defendant McCaleb was assessed for taxes for the year 1934, at a valuation of $24.00 per acre; that such tillable land so owned by the defendant Gregory was assessed for taxes for the year 1934 at a valuation of $21.00 per acre; that such tillable land so owned by the defendant Cobb was assessed for taxes for the year 1934 at a valuation of $20.00 per acre, and the tillable land so owned by the Hon. W. N. Stokes was assessed for taxes for the year 1934, at a value of $20.00 per acre.

"That such assessed valuations in each instance, and in the instances of all persons similarly situated, amounted to an assessment as to such properties of only twenty (20%) per cent. to twenty-five (25%) per cent. of the reasonable cash market values of said respective properties as of January 1, 1934. Whereas, the properties of this plaintiff described in groups Nos. 1 and 2 above were assessed for taxes in excess of their true market values as of said date, and since this plaintiff was not the owner of any land similar to the highly improved, tillable land herein described, the action of said commissioners' court, sitting as a board of equalization, resulted in legal fraud upon the rights of this plaintiff and resulted in discrimination in favor of the said Gregory, McCaleb, Cobb, Stokes, and other persons similarly situated, and against this plaintiff."

McCaleb, Gregory, and Cobb were members of said board of equalization and are parties to this suit.

Upon a full hearing before the trial court, judgment was entered for appellee, as prayed for.

Of the many contentions relied on to support the said judgment, only that raising a violation by discrimination of the constitutional guaranty of uniformity of taxation will be discussed. It will be noted that appellee alleges a discrimination between the taxes assessed against its lands and the cultivated farm lands of the county, in that the former was assessed at more than its market value, while the latter was assessed at from 20 to 25 per cent. of its reasonable cash market value.

Even if there are errors which relate only to some other theory of recovery, the judgment here finds support, we think, in the ground just mentioned, and such other errors, if any, become harmless. Commercial Standard Ins. Co. v. Shudde (Tex.Civ.App.) 76 S.W.(2d) 561, 564, and authorities there cited.

We therefore narrow the inquiry to this one question: Does the testimony, considered in its most favorable light to appellee, support the implied finding of the court that the board of equalization intentionally and arbitrarily assessed the property of appellee at a substantially higher value than it did the cultivated lands of Wilbarger county? If yes, its judgment must be af-

firmed, though an issue might have existed under the evidence which would have justified a different conclusion and judgment.

There was no dispute between the parties, except as to the value of appellee's oil producing properties for taxation, of which it owned a large acreage in Wilbarger county. This property was rendered at $634,778. This amount was raised by said board of equalization to $1,058,932. A witness for appellee testified, both before said board and later before the trial court, that its value as of January 1, 1934, was the said sum of $634,778. This was disputed, but the trial judge heard all the witnesses, and we are bound by his implied finding. We therefore take the last figure quoted as being the full value of the property in controversy. It was assessed for more than this. Turning now to the evidence of the value of cultivated farm lands, two witnesses testified to the value as of said date of various tracts of farm lands. We mention the following as measurably typical of all: Gregory, one of the county commissioners, owned 1,047 acres of such land, valued by said board at $25,675, or approximately $25 per acre. McCaleb, another county commissioner, owned 101 acres, valued at $2,500. Respecting the value of these, witness Moore testified:

"Q. I will ask you particularly about Mr. Gregory's land. Did it or not, in your opinion, have a reasonable cash market value as of January 1st, 1934? A. I think it did, yes, sir.

"Q. Do you know that value? A. It is worth anywhere from $100 to $150 per acre. * * *

"Q. What, in your opinion, was the reasonable cash market value of the good land on the river owned by Mr. Gregory, as of January 1st, 1934? A. $75.00 per acre. * * *

"Q. In your opinion, what was the reasonable cash market value of Mr. McCaleb's land on January 1st, 1934? A. From $80.00 to $100.00."

Continuing, this witness further testified:

"Q. Have you made, or caused to be made, an inspection and careful study of land values in Wilbarger County, Texas, and the rates at which they went on the tax rolls for the year 1934? A. Yes, sir, I studied them very closely.

"Q. From your knowledge and information with respect to the reasonable cash market value of farm lands in Wilbarger County on January 1st, 1934, and from your inspection and study of the rates for that year, can you tell us at what proportion of their reasonable cash market value farm lands went on the tax rolls of this county for 1934? A. Anywhere from twenty to sixty per cent. of their cash value.

"Q. Do you know of any farm land in the county that, in your opinion, was placed on the tax rolls for that year at one hundred per cent of their reasonable cash market value? A. Not one foot."

Witness Hoffman testified in part:

"Q. You honestly believe that they are assessing oil values out of proportion to real estate, do you not, Mr. Hoffman? A. Yes, sir, I certainly do.

"Q. And you own both? A. Yes, sir."

Without lengthening this opinion by a further detailed statement of the evidence, we are of the opinion that it furnished a sufficient basis for a finding by the trial court that there was a purposeful and arbitrary discrimination made between the taxable values placed on the oil properties of appellee and the cultivated farming lands of the county belonging to others, by the said board of equalization. We say this without implying that such would have been our conclusion upon the same facts.

We quote from the authorities:

"It is not necessary that the officers in so discriminating should have intended specifically to injure the appellee or other railroad companies. It is sufficient that by their action they denied the appellee the equal protection of the Constitution and laws of the state." Lively v. Missouri, K. & R. Ry. Co. of Texas, 102 Tex. 545, 120 S.W. 852, at page 857.

"Except where the constitution itself fixes the value at which certain property shall be taxed, the constitutional provisions relating to equality and uniformity in taxation have been held to require equality and uniformity in the mode of assessment as well as in the rate charged, and to forbid discrimination between different classes or species of property all equally subject to the tax as by assessing one kind of property at a certain proportion of its real value and another kind at another proportion, and also to forbid the valuation of property for taxation for one purpose at a different amount than that for taxation for other purposes. An assessment is equal and uni-

form when all the taxable property in the taxing district is valued at the same proportion of its real value." 61 C.J. pp. 114–116.

"If actual discrimination was practiced it is immaterial that the members of the board did not intend to act unfairly. But where an excessive valuation has proceeded from a conscious failure of the members of the board to exercise their discretion impartially, the court may annul the assessment. Such dishonest intention may be shown in various ways—as by evidence that undervalued property belonged to a member of the board, or by a showing that the board intended that the assessment complained of should be at a value relatively higher than other property in the taxing unit. * * *

"Where the valuation is arbitrary for any reason, the assessment is void, notwithstanding that other property in the district, of the same character, was uniformly assessed in the same way. * * *

"It follows from Const. art. 8, § 1, providing that taxation shall be equal and uniform, that any method of assessment which leads to discrimination in practice is unconstitutional." 40 Tex.Jur. pp. 159, 160, 162–164.

We are of the opinion that a discussion of any other question raised on this appeal is unnecessary.

Judgment affirmed.

HALL, C. J., not sitting.

On Motion for Rehearing.

MARTIN, Justice.

In a vigorous motion, appellants claim that our opinion tends to confuse the law as announced by the Supreme Court and is in conflict with many of its decisions. The present case is disposed of mainly upon the holding that the evidence sufficiently raised an issue of a "purposeful and arbitrary discrimination" between the values placed on the oil properties of appellees and the cultivated farming lands of Wilbarger county. We quoted some, but not all the evidence which tends to support this implied finding of the trial court.

There may exist evidence which shows "an error of judgment" on the part of the board, but appellants' trouble is that the trial court refused to believe this, and we know of no law that authorizes us to set aside a judgment of the trial court, if sufficiently supported by evidence. We are not able to believe that such "dire results" as prophesied by appellants will follow in the wake of this opinion. This case goes no further than merely to give effect to a trial court finding. Here there is evidence that not one foot of farming land was placed on the rolls at its full value, while appellee's oil properties were; that farming land belonging to some of the board members was placed on the rolls at about one-fourth its value, but appellee's oil lands were valued at 100 per cent. The law we announce is hoary with age. If appellants were here with a favorable finding, their present contention would have merit.

Motion overruled.