## HARLINGEN INDEPENDENT SCHOOL DIST. v. DUNLAP.

### No. 10744.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1940.

Rehearing Denied Nov. 27, 1940.

**236**

Kent & Brown, of Harlingen, for appellant.

H. L. Faulk, of Brownsville, for appellee.

NORVELL, Justice.

This is an appeal from a judgment of the District Court of Cameron County vacating certain assessments for tax purposes made by appellant, Harlingen Independent School District, upon certain real property owned by appellee, B. H. Dunlap, and situated in the City of Harlingen, Texas. Trial was to a jury, but after the conclusion of the evidence the trial court peremptorily instructed the jury to return a verdict for plaintiff, and entered judgment vacating the assessments made against appellee's property (Lots 21 and 22 of the Original Townsite of Harlingen) for the years 1930 to 1938, inclusive. It was however provided that the judgment should not prejudice appellant's right to re-assess the property involved. This latter holding was contrary to appellee's contention that he was entitled to settle his taxes upon the property upon the valuations contained in his tax renditions of certain years. The case is before us upon the assignments of error of the School District and a cross-assignment of Dunlap in regard to the matter above mentioned.

Appellant presents three propositions of law. The first proposition asserts that Dunlap cannot maintain this suit, which is one in equity seeking to cancel an assessment, as he does not come into court with "clean hands." It is asserted that as Dunlap made renditions upon his property upon an admittedly low valuation, he has no standing in a court of equity. This proposition is overruled. Upon the trial, Dunlap admitted that he placed a valuation upon the property which was below what he regarded as the true market value. It appears that this was done in order to raise the issue of the true taxable value of the property before the District's Board of Equalization. In a sense the rendition valuation was not made in good faith. Dunlap's action, however, amounts to no more than taking an extreme position in reference to a controversy and a prospective lawsuit. It does

not preclude Dunlap from proceeding in equity for the vacation of a tax assess-ment alleged to have been made in violation of the Constitution and laws of this State. The fact that the valuation contained in the rendition was not a good-faith estimate of the true value of the property does however preclude Dunlap from making a settlement of his tax liability upon the basis thereof, and his cross-assignment is for that reason overruled.

In appellant's second and third propositions, it is asserted that the trial court erred in giving a peremptory instruction as there was a question of fact raised by the evidence which should have been submitted to the jury. The jury question involved, according to appellant's contention, is whether or not appellee's property had a market value during the years 1930 to 1938, inclusive.

■ In our original disposition of this case, we held that the evidence relied upon by appellant as presenting a fact issue in this particular was so general and inconclusive when applied to appellee's property that it could properly be considered as no evidence at all. We still adhere to that view, but our affirmance of this case is not based upon that holding alone.

It is appellee's contention that the assessments are invalid for the reason that the School District's Board of Equalization acted arbitrarily and contrary to statutory provisions in placing its valuations upon appellee's property. These valuations were based upon the "intrinsic value" rather than the "market value" of the property. It appears that appellee, accompanied by his attorney and witnesses, appeared before the various Boards of Equalization of the District and protested the values which the Board proposed to place upon his property based upon the "intrinsic value" theory, and offered to show by evidence that the property did have a market value, which was substantially less than the proposed assessed valuation. It further appears that the Board on each of such occasions refused to hear appellee's evidence or stated, before hearing the testimony offered, that there would be no change in valuations.

This action on the part of the Board of Equalization was contrary to the provisions of Article 7211, Vernon's Tex.Civ. Stats., applicable to Independent School Districts, wherein it is provided that the

tax equalizing body "shall hear evidence and determine the true value of such property."

Article 8, section 1, of the Texas Constitution reads as follows: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

■ "This provision is mandatory, and, with the requirement of due process, it forms the starting point of any inquiry into the question whether any property has been arbitrarily assessed." 40 Tex. Jur. 160.

■ It is also stated in Texas Jurisprudence that: "Where the valuation is arbitrary for any reason, the assessment is void, notwithstanding that other property in the district, of the same character, was uniformly assessed in the same way." 40 Tex.Jur. 162. "Valuation of property is arbitrary where the board refuses to hear pertinent evidence, including the estimate of competent witnesses which is not objectionable as stating a conclusion." 40 Tex.Jur. 163. See also State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076; Poteet v. Waggoner Estate, Tex.Civ.App., 96 S.W.2d 405.

■ It is well settled that the word "value" as used in Art. 8, sec. 1, of the Constitution means the reasonable cash market value of the property. Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; 40 Tex.Jur. 148. If property has a market value, that value is controlling and exclusive for taxation purposes, and precludes a resort to the "intrinsic value" theory.

■ It is clear that the right of a taxpayer to have his property assessed for taxation purposes at its market value, if there be a market value, and not in excess thereof, is one which is guaranteed by the Constitution of this State. He also has the right to demand that the valuation of his property for tax purposes be "ascertained as * * * provided by law." In this case it was the duty of the Board to determine whether or not appellee's property had a market value for the years in question. If it did have, that value would be controlling for taxation purposes. The Board refused to perform this duty, and arbitrarily adopted valuations based upon an "intrinsic value" theory.

This being true, a jury finding that the property involved had no market value for.the years 1930 to 1938, inclusive, would not in itself preclude appellee from obtaining equitable relief. That point is definitely settled by the case of Brundrett v. Lucas, 194 S.W. 613, 617, wherein Judge Moursund, writing for this Court, said: "The action of the board in disregarding the testimony introduced, which testimony was not disputed, nor impeached by documentary evidence, was arbitrary and directly in the face of a mandatory statute, and furnished a sufficient basis for a suit in the district court to enjoin the collection of taxes upon the increased value thus made in the assessments." Further on in the opinion, Judge Moursund said: "In speaking of excessive valuation, we are taking as correct the finding of the trial judge to the effect that the valuation adopted by the board, namely, of about $5 per acre, was excessive to the extent of about $2 per acre. This finding is not attacked, but several assignments attack the rulings of the court in regard to excluding evidence relating to value, and some of such assignments are deemed by us to be well taken. Therefore, if this affirmance of the judgment must depend upon whether the value fixed by the board is in fact in excess of the reasonable cash value, the sustaining of such assignments would require the reversal of the judgment. *However, we do not think the failure of the board to comply with the terms of a mandatory statute can be justified by showing that, if the same witnesses had been summoned and same evidence introduced as upon the hearing in the district court, the order of the board would have been sustained by evidence.* When the board arbitrarily failed and refused to follow the law, and raised valuations contrary to the express provisions of the statute, it must be held that the raise should be set aside and held for naught by the district court." (Italics ours.)

The situation in this case is strikingly similar to that disclosed in Brundrett v. Lucas, supra. Appellant, upon the trial of this case in the district court, relied upon the testimony of three witnesses as supporting the intrinsic value theory—the President of the Board of Trustees of the District (whose testimony covered only the year 1931), a member of the District Board of Equalization, and the School District Assessor and Collector. The testimony of these witnesses was in substance that property generally in the district had no market value from 1930 to 1938. If this testimony, which was contradicted by appellee's witnesses, who testified specifically that the property involved did have a market value, can be considered as sufficient to support a fact finding that appellee's property had no market value, or as supporting the action of the board of equalization in proceeding upon the "intrinsic value" theory, it would still be insufficient to preclude the setting aside of valuations arbitrarily placed upon property in violation of the provisions of Article 7211, supra.

We have concluded that appellant's· second and third propositions were properly overruled, and that our original disposition of this case was correct. Our original opinion will be withdrawn and this one substituted therefor.

Appellant's motion for rehearing is overruled.