**DALLAS NAT. BANK v. DALLAS COUNTY et al.**

No. 13373.

Court of Civil Appeals of Texas. Dallas.
April 2, 1943.

On Rehearing June 25, 1943.

Further Rehearing Denied July 23, 1943.

Hamilton, Lipscomb, Wood & Swift, of Dallas, for appellant.

Dean Gauldin, Dist. Atty., and H. Pat Edwards and Warren S. Cook, Asst. Dist. Attys., all of Dallas, for appellees.

YOUNG, Justice.

Appellant brought suit against Dallas County, through its proper officials, to re-

strain the enforcement of a 1941 assessment against land owned by it as Trustee, alleging arbitrary, discriminative and fraudulent methods in valuation. Upon a trial to the court, the relief prayed for was denied and the assessment declared valid, with resulting appeal by the Bank.

All issues raised by pleading are revealed in the following résumé of material testimony: The land in question, known as the W. P. Jackson Estate, of some 153 acres, lies in the northern part of Dallas County and adjoins the Preston Road, a cardinal highway extending northward from the Dallas city limits. In May, 1941, Mr. Mangrum, appellant's trust officer, duly rendered the tract for State, County and school tax purposes, with the Dallas County Assessor, for $4,160, or approximately $27 per acre; the rendition being in effect the same as of previous years. The Assessor indicated his dissatisfaction with appellant's valuation and proposed an increase to $30,300, or approximately $200 per acre; and here we quote from the trial court's findings: "In compliance with a notice from the Commissioners Court, the Dallas National Bank appeared before the Commissioners Court, sitting as a Board of Equalization, on July 1st, 1941, and protested the valuation proposed by the Tax Assessor. At the hearing Dallas National Bank called attention to the assessments of property adjoining and nearby the Jackson property. No evidence, however, was introduced by the Bank on the value of the Jackson tract or of any other property in Dallas County. With the exception of Tom Field, the Commissioners and the County Judge were not familiar with the property in question. Nor were the members of the Commissioners Court, except Tom Field, familiar with any property in the vicinity or its value. In 1940 the County condemned two acres of the Jackson tract. In said proceeding the two acres were valued at $500.00 an acre and the County paid said sum for the two acres condemned. These facts were known to all members of the Commissioners Court. There are in Dallas County more than 100,000 pieces of property, which also was known to the Commissioners Court. Prior to the hearing in question, the Commissioners Court had provided that property in Dallas County should be assessed at 55% of its value. Taking into consideration the plan of assessing property throughout the County at 55% of its value and the information which

[it had] the Court fixed its value for tax purposes at a total value of $27,400.00, which is approximately $175.00 per acre. In accordance with instructions from the Board of Equalization, Ed Cobb assessed the property at a value of $27,400.00. * * * The tracts of land in the immediate vicinity of the Jackson tract, their acreage and their assessed values for 1941 were as follows:

| Tract | Acreage | Assessed Value per Acre |
|---|---|---|
| Henry D. Lindsley | 305.59 | $35.00 |
| Aronson and Forence | 35.91 | 20.00 |
| S. W. Armstrong | 99. | 20.00 |
| J. H. Luna | 68¼ | 29.00 |
| S. J. Schreiber | 116.8 | 28.00 |
| H. A. Schreiber | 70.36 | 28.00 |
| Alvah H. Daniel | 102.1 | 24.00 |

Each of the above tracts and the Jackson tract are of the same approximate kind and value." The trial court concluded that no reason existed for holding the assessment void, and that the decision of the Board of Equalization was final.

The tracts just listed had also been valued in previous years at approximately the amounts shown above, obviously as farm property; and the record discloses, by affidavit of ·W. C. Rettick, Deputy Tax Assessor for Dallas County, that, beginning with the tax year 1942, the valuations of said adjoining lands had been raised to $175 per acre. Testimony of witnesses at the trial valued surrounding tracts at from $200 to $300 per acre, and the land in controversy (Jackson estate) at $250 per acre.

Appellant claims injury under § 1, Art. 8, State Constitution, Vernon's Ann.St., and its points of appeal are, in substance, that: (a) The Jackson estate assessment, being fixed at a materially higher percentage of valuation than the values at which other lands in the vicinity were assessed for the year 1941, violates above constitutional provision of equality and uniformity in taxation; (b) the particular valuation of appellant's land for tax purposes was arbitrary, discriminative, and fraudulent, constituting, under undisputed facts, a taking of property without due process.

Aforesaid valuation of $27,400, standing alone, cannot be considered arbitrary or excessive, for the appraisal was admittedly less than the fair market value of this prop-

erty. Nor does the record support any charge of "fraudulent assessment," in the sense that same was intentionally made with a view of casting an undue proportion of taxes upon appellant, or pursuant to a scheme whereby inequality has resulted in valuation as compared to similar and adjacent lands. Appellant's prime complaint, therefore, narrows to the Tax Assessor's failure to appraise these lands at more nearly their true value at the time of its own increased assessment, charging that such other valuations were so grossly disproportionate as to be fraudulent in law; citing, in support: Lively v. Missouri, K. & T. R. Co., 102 Tex. 545, 120 S.W. 852. The same percentage of valuation (55%) was applied to all property involved after full values had been fixed and equalized by the proper tax authorities; hence, the rule announced in the Lively case was not infringed. In this connection, it is to be noted that the good faith of the Tax Assessor, in making above assessments, is not questioned. Also, the evidence indicates that in appellant's hearing before the Equalization Board, that body was disposed to increase adjoining values, but, of course, was powerless to do so without notice; and, consistent with this, the record reveals appropriate steps already taken by the Assessor toward a uniformly higher valuation of all described tracts' for subsequent years.

We are convinced that the valuation of adjoining lands, disproportionate as they were for the one year (1941), when compared to appellant's valuation, was due solely to the mistaken but honest judgment of the Assessor; at least, a finding to such effect was warranted by the evidence. Likewise, the County Tax Board, not being privileged to increase other assessments (for want of notice—Art. 7206 Vernon's Ann.Civ.St.), was well within the exercise of its authority and discretion in arriving at the valuation of which appellant complains; and thus no actionable discrimination is shown. " * * * mere omissions or errors of judgment of the taxing officials in the exercise of an honest judgment will not invalidate the assessment." 61 C.J., p. 120; Lubbock Hotel Co. v. Lubbock Ind. School Dist., Tex.Civ.App., 85 S.W.2d 776; Druesdow v. Baker, Tex. Com.App., 229 S.W. 493; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; State v. Houser, 138 Tex. 28, 156 S.W.2d 968. It is only when the discrimination (under valuation) is intentional, systematic, and persistent that the taxpayer is entitled to relief, his own property not having been assessed above its fair value. Cooley on Taxation, 4th Ed., §§ 1143, 1650; Phillips Pet. Co. v. Townsend, 5 Cir., 63 F.2d 293; Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154.

The propositions raised have been somewhat difficult of solution, by reason of the many appellate decisions involving § 1, Art. 8 of our Constitution. However, in the situation here presented, we believe the trial court correctly ruled that the action of the equalization body was conclusive, and accordingly sustain the judgment under review.

Affirmed.

### On Rehearing.

Appellant's primary complaint is of unjust discrimination, in that, defendant Board of Equalization has approved for the year 1941, a valuation upon its land approximately seven times in excess of the tax valuations placed upon surrounding and similar lands. After consideration of the cause on rehearing, we conclude that the foregoing and sole issue has not been correctly disposed of, in light of Art. 8, § 1, State Constitution, which says: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Our inquiry may well begin with appellant's protest of the assessor's appraisal, the equalization hearing of July 1, and what there transpired; having first in mind the location of all tracts described in the court's findings relative to the Jackson acreage, which, by the way, was unimproved. West across Preston Road were the Lindsley and Luna tracts; along the entire east and south sides lay the two Schreiber tracts, and the Aronson and Florence land adjoined on the northeast corner. Aforesaid findings of fact are that no testimony was offered by Bank attorneys on values, and that the Equalization Board, with the exception of Commissioner Field, was not familiar with the particular lands or their valuation. The hearing seems to have been an informal one; and to the extent above findings indicate that the Board was not there informed by appellant's representatives concerning

the similarity of all lands as to kind and value, the same is not supported by the statement of facts. Indeed, the inequality of the Bank's higher assessment appears to have been assumed and recognized by the Board, the expressed desire of several members being to equalize by causing a corresponding increase in surrounding assessments. And explanatory of the Board's refusal to lower appellant's assessment, the following testimony of Commissioner Frank at the later court trial should be quoted: "Q. Now, Mr. Frank, I believe you made a statement at one or both of those sessions that the County of Dallas had purchased from the owners of the Jackson Estate by condemnation proceedings about two acres of land and paid about $500 an acre for it? A. That is correct. * * * Q. You made that statement. Now, Mr. Frank, isn't it also true that you made the statement that since the County had paid $500 an acre for that land, you would not consider reducing it one dime regardless of the value assessed against other or similar lands in the same vicinity? A. Well, that's correct."

■ Upon appellant's protest and the Board hearing thereon, we believe that such County Commissioners should have proceeded to an equalization of these values, either by (1) raising adjoining valuations after notice, Art. 7206, § 5, or (2) appropriately reducing appellant's valuation, in view of the constitutional mandate that taxes should be equal and uniform. State Const., supra. Neither course was taken by the Board, hence their action of July 1, confirming an assessment against appellant, approximately seven times in excess of that imposed on lands similarly situated, was illegal and grossly discriminatory, to the material prejudice of complainant. Zachary v. City of Uvalde, Tex.Com.App., 42 S.W.2d 417; Victory v. State, 138 Tex. 285, 158 S.W.2d 760.

■ Full weight may be accorded the court's findings of fact, still under the whole record (mainly uncontroverted), it is our conclusion that the Rule invoked in original opinion is inapplicable to the case as made. This was a direct attack upon the judgment of the Equalization Board; Brown v. First Nat. Bank, Tex.Civ.App., 175 S.W. 1122, writ refused; which, though regular on its face, may be rendered voidable by weight of competent testimony. 25 T.J., Judg-

ments, p. 696; 40 T.J., Taxation, pp. 156–158. In such a proceeding all lands involved have been conclusively shown to be of like kind and value; and where, in the situation thus presented, taxes are levied upon appellant's land on a basis of 70% of its full value, in contrast to 10% thereof on adjacent lands, an inequality results that may be invalidated; for the wrong inflicted upon appellant was not in requiring it to pay taxes based upon approximately the full value of its property, "but in denying to it the equality of taxation secured by the Constitution, which equality of taxation necessarily depends upon uniformity of assessment." Lively v. Missouri, K. & T. Ry. Co., 102 Tex. 545, 120 S.W. 852, 857. Contrary to our original analysis of the Lively case, we believe the principle there involved is likewise applicable here. There, all property values were fairly determined but the Railroad intangibles were assessed on full valuations, while property of individuals at only 66⅔% thereof. Here, the same percentage of valuation (55%) was applied to all property, but the method pursued by the Board has confirmed a full valuation on appellant's land, seven times in excess of that affixed to similar and surrounding lands. The value of property is the correct standard of uniformity, and taxation cannot be in proportion to the value of property unless the value of all property is ascertained by the same standard. Hunt v. Throckmorton Independent School Dist., Tex.Civ.App., 59 S.W.2d 470; Lively v. Missouri, K. & T. Ry. Co., supra.

Appellees earnestly argue that, the equalization proceedings being regular in form, the burden was upon appellant to show fraud or its equivalent in connection with the higher assessment, which the testimony wholly failed to establish; also, that complainant suffered no legal injury, in that its assessment, after all, was upon less than actual or market value.

■ It may be, under the court's findings, that the Board merely failed to properly investigate adjoining values, and was not guilty of fraud in the sense of intentional discrimination. The result was the same—a disproportionate assessment, of which, we have already concluded, the Board had been duly notified; and that the equalizing agency may not have intended to act unfairly is immaterial; Poteet v. W. T. Waggoner Estate, Tex.Civ.App., 96 S.

W.2d 405. Consequent upon such hearing, appellant's assessment was unconstitutional, though based on less than actual value, when its property is assessed on a greater proportion of its full value than is used at the same time in the assessment of like and adjacent lands. "The fact that appellant would pay on a valuation less than the full and true value does not make the taxes 'equal and uniform,' nor its land 'taxed in proportion to its value.' Langley et al. v. Smith et al., 59 Tex.Civ.App. 584, 126 S.W. 660. To assess the property of one or a few owners at a materially higher percentage of its value than the percentage of the value at which the property of a great majority of the owners in the district is assessed is unconstitutional, and, especially if done in pursuance of some custom, system, or scheme in which values are not ascertained as provided by law, it is discrimination." Garza Land & Cattle Co. v. Redwine Independent School Dist., Tex.Civ. App., 282 S.W. 905, 908; Randals v. State, Tex.Civ.App., 15 S.W.2d 715. While no system or scheme on part of the Board has been alleged or claimed in the case at bar, yet, as compared to lands similarly situated, the procedure herein has resulted in fixing upon appellant's property a value without regard to and in violation of the principle of uniformity and equality required by the Constitution.

We further conclude that the 1942 action by tax officials, wherein the existing inequality in values was corrected, has no special bearing on a charge of discrimination for the year in suit.

Appellant has heretofore tendered and paid into court the sum of $55.77, the amount properly due on its original tax rendition, in connection with the equitable relief sought. On grounds hereinabove briefly indicated, it is our opinion that petitioner is entitled to the final injunction as prayed, and that the trial court should have rendered judgment invalidating the particular assessment. The trial court is therefore instructed to so adjudicate the present controversy without prejudice to the right on part of appellee tax officers to reassess the property in accordance with provisions of Title 122, Taxation, R.S. Art. 7346 et seq; Electra Independent School Dist. v. W. T. Waggoner Estate, Tex.Com.App., 168 S.W. 2d 645.

Reversed and rendered with instructions.

BOND, C. J., dissents and adheres to original opinion.