EAST and MT. HOUSTON INDEPENDENT SCHOOL DIST.

v.

SOUTH TEXAS LUMBER CO.

No. 12735.

Court of Civil Appeals of Texas.

Galveston.

June 10, 1954.

Rehearing Denied July 8, 1954.

Ernest A. Knipp, Houston, for appellant.

Platt, West & Stevenson, J. A. Platt, and Arthur Platt, Jr., Houston, for appellee.

GRAVES, Justice.

This was a suit by appellant School District against the appellee Lumber Company to recover for taxes claimed to be owing to the School District by the Lumber Company for the years 1948 to 1952, both inclusive, on mineral interests owned by the Lumber Company in certain lands lying within the School District. Taxes on the surface rights were neither sued for, nor otherwise involved in any way.

The trial below was in the 80th District Court of Harris County, Honorable Roy Campbell presiding without a jury, and resulted in a general judgment for the appellee cancelling all of the declared upon tax assessments against it, without prejudice

to the right of the School District to re-assess the property, as provided by law.

This record and these briefs are inordinately long, hence this Court will undertake to reduce the matter involved on the appeal, as much as may be, by following the grouping processes the parties in this Court have adopted.

Appellant, on the one hand, states some 29 assignments of error, which it discusses under some 7 points, as follows:

Points 1 to 10, inclusive, under Group No. 1;

Points 11 to 13, inclusive, under Group No. 2;

Points 14 and 15, under Group No. 3;

Points 16, 17 and 18, inclusive, under Group No. 4;

Points 19 and 20, under Group No. 5;

Points 21 to 27, inclusive, under Group No. 6;

Points 28 and 29, under Group No. 7.

The appellee, in turn, makes extended reply to appellant's presentments, by stating some 12 answering points, in which it contends that every finding of fact made by the trial court was fully supported by the evidence, and that its disposition squared with the law of Texas, as declared by the many authorities it cited in support thereof.

This cause had been set down for oral argument, but the parties waived that procedure, and have submitted it instead upon extended briefs for each of them; this Court had already reviewed the briefs in preparation for the oral argument, following its regular practice in that respect, so that it comes now to decide the controversy upon the restudy of those briefs.

It is concluded that the trial court's judgment was correct, and should be affirmed.

As against the judgment so implementing the findings thereafter stated, appellant has presented its seven groups of alleged errors by the trial court, criticizing its entire action, including all of its findings of fact,

as not being sustained by the evidence and challenging its conclusions of law as being wholly without support in our jurisprudence. It is deemed wholly unnecessary to enter into or undertake a statement of all the detailed criticisms they so make of the trial court's findings, both on the findings of fact and the conclusions of law; this for the reason, as this Court views it, that each and every finding of fact, as so made and filed by the court, was fully supported by the evidence produced upon the trial, including all its detailed recitations as to the procedural transactions between the two parties.

 Wherefore, that situation called for a wholly different line of authorities as sustaining the appellee's counter-points. For instance, the evidence supports the trial court's finding that the board of equalization did not value the mineral properties, for the years involved in this suit, according to the market value thereof, as the laws of this State require; but that such board adopted a fundamentally different and wrong principle—as the court's finding declares—for determining such values for taxation purposes, thereby wholly invalidating them. Texas Constitution, Art. VIII, § 1, Vernon's Ann.St.; Articles 7206, 7211 and 7212, Vernon's Ann.T.S.; 40 Tex.Jur. 157, Sec. 113; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Electra Independent School District v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645; Whelan v. State, Tex.Civ.App., 252 S.W.2d 271; Murchison v. Post Independent School District, Tex.Civ.App., 258 S.W.2d 229; Hunt v. Throckmorton Independent School District, Tex.Civ.App., 59 S.W.2d 470; Harlingen Independent School District v. Dunlap, Tex.Civ.App., 146 S.W.2d 235; Ogburn v. Ward County Irr. District No. 1, Tex.Com.App., 280 S.W. 169.

Further discussion is deemed unnecessary since these conclusions determine the merits of the appeal. They require an affirmance of the trial court's judgment. It will be so ordered.

Affirmed.

Exhibit "A"

"Findings of Fact

"1. East and Mount Houston Independent School District, plaintiff, brought this suit against South Texas Lumber Company, defendant, for the collection of taxes, and enforcement of tax lien, alleged to be owing for the years 1948, 1949, 1950, 1951 and 1952 against property of the defendant located in the Dyersdale Oil Field and within the school district, described in plaintiff's petition as follows:

"A royalty interest of ½ of all oil, gas and other minerals as provided in oil lease dated August 30, 1949, from South Texas Lumber Company to C. J. Brown and W. J. Rasnick, describing lot 12 of block 10 of Houston Suburban Heights Subdivision in the Whitney Britton Survey in Harris County, Texas, and recorded in Vol. 569, page 618, of the contract records of Harris County, Texas.

"A royalty interest of ½ of all oil, gas and other minerals as provided in oil lease dated February 4, 1944, from South Texas Lumber Company to J. M. Wreh, describing lots 11, 12 and 13 and the East 5.89 acres of lot 10 of block 12 of Houston Suburban Heights Subdivision in the Whitney Britton Survey in Harris County, Texas, and recorded in Vol. 428, page 615 of the contract records of Harris County, Texas.

"A royalty interest of ½ of all oil, gas and other minerals as provided in oil lease dated November 1, 1940, from South Texas Lumber Company to J. M. English, describing lot 15 of block 16 of Houston Suburban Heights Subdivision in the Whitney Britton Survey in Harris County, Texas, and recorded in Vol. 375, page 68, of the contract records of Harris County, Texas.

"A royalty interest of ½ of all oil, gas and other minerals as provided in oil lease dated January 15, 1947, from South Texas Lumber Company to Texana Petroleum Company, describing lot 16 of Block 10 of Houston Suburban Heights Subdivision in the Whitney Britton Survey in Harris County, Texas, and recorded in Vol. 480, page 397, of the contract records of Harris County, Texas.

"All oil, gas and other minerals in, on or under lots 4, 5, 7, 8, 9, 10, 11 and 12 of block 7; subdivision 'A' and North ½ acre of subdivision 'C' of lot 1 of block 11; subdivision 'A' and 'C' of lots 9, 10, 11, 12 and 13; subdivision 'B' and South ½ acre of subdivision 'A' of lot 9; all in Houston Suburban Heights Subdivision in the Whitney Britton Survey in Harris County, Texas.

"2. Defendant made rendition of its properties for tax purposes to the authorities of the plaintiff school district for each of the years 1948, 1949, 1950, 1951 and 1952.

"3. The school board employed an engineer, T. Morgan Biggs, to assist it in appraising, for taxation purposes, mineral interests in lands located within the school district.

"4. The board did not value defendants properties for taxation according to its market value.

"5. In each of the five years involved in this suit the plaintiff's engineer proposed a plan and formula to the school board for valuing mineral interests within the district for taxation, which formula was adopted and used by the school board in the said respective years.

"6. The formula and plan used by the board for appraising mineral properties of defendant and others within the school district, was as follows: The number of barrels of oil actually produced from a well in a definite period of time, usually 62 days, consisting of the month of January of the taxable year plus the 31 days of December of the preceding year, was first ascertained. The total production in barrels from the well in that period would then be divided by 62, to obtain the average daily production for such 62 days period. Such average daily production was then multiplied by an arbitrarily determined number of dollars value per barrel, and the result thereof was adopted as the taxable value of the operator's ⅞th working interest in the

well. Then an arbitrarily determined percentage of such ⅞th operator's value was adopted as the taxable value of a ⅛th royalty interest. The value for tax purposes on a ⅘th royalty interest was then fixed at four times the value, as so determined, of a ⅛th royalty interest. In each of the years involved in this suit a figure decimal part was allowed as water credit, and deducted from the operator's valuation, and another figure decimal part was allowed as water credit and deducted from the royalty owners' valuation.

"7. Minerals were valued for tax purposes in each of the five years involved in this suit in accordance with the formula and plan prepared by T. Morgan Biggs for the respective years. The method used was the same in principle for each year.

"8. In each of the taxable years involved in this suit, the defendant herein, through its agent appeared before the Equalization Board and objected to the method used in valuing defendant's mineral interests for taxation and the distribution made between the working interest and the royalty interest. These protests and objections were overruled and denied.

"9. The formula prepared by Biggs was the controlling factor in determining the valuations for taxation purposes of mineral properties in the school district. The board made some adjustments where changes occurred in the condition of wells; and certain percentage adjustments were made, which were uniform and arbitrary, being based upon Biggs schedules.

"10. Neither party offered any evidence as to the market values of defendant's mineral interests in the respective years involved in this suit.

"11. A delinquent tax notice signed and certified by the tax assessor and collector of plaintiff, East and Mount Houston Independent School District, and offered in evidence by plaintiff, indicated there were certain delinquent taxes due and unpaid by defendant, South Texas Lumber Company, for the year 1948, according to the Rolls and Delinquent Tax Record in such district, on the following described property:

| Addition or Survey | | Block | Lots-Acres | Years Del. |
|---|---|---|---|---|
| Mineral: | | | | |
| 117 | .500000 | W Minerals–C. J. Brown | 44 | |
| 117 | .500000 | Minor Stewart–J. M. English | 12.95 | |
| 117 | .500000 | So. Texas Lum. Co.–Texana Pet. Co. | 12.95 | |
| | | | | 1948 |

"Conclusions of Law

"1. The method used by plaintiff for valuing defendant's properties for taxation in the years involved in this suit was arbitrary, fundamentally wrong, and illegal.

"2. The plaintiff failed to comply with the requirements of the Constitution and laws of the State of Texas in appraising defendant's property for taxation in each of the years involved in this suit, resulting in a lack of jurisdiction, and the attempted assessments are void.

"3. The copy of Delinquent Tax Notice for the year 1948, offered in evidence by plaintiff, was but a conclusion of the officer making the same, the description of the land therein set out was not sufficient to justify the entry of an order for the sale of any of the property described in plaintiff's petition, and therefore did not show a valid tax-assessment for the year 1948.

"4. Plaintiff was not, under the law, entitled to judgment.

"March 10, 1954."